# EXHIBIT B

62-TR-CV-16-5
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                          SECOND JUDICIAL DISTRICT

---

In the Matter of the National Collegiate
Student Loan Trusts 2003-1, 2004-1,
2004-2, 2005-1, 2005-2 and 2005-3.

Case Type: Other

File No. **62-TR-CV-16-5**

---

### PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF TRUSTS PURSUANT TO MINN. STAT. § 501C.0201

TO THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT:

1.      Petitioner U.S. Bank National Association ("U.S. Bank") files this petition (the "Petition") solely in its capacity as indenture trustee (the "Indenture Trustee") acting for the benefit of the holders of notes issued through certain securitization trusts (the "Indenture Trusts") in connection with the following Delaware Statutory Trusts: National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2 and National Collegiate Student Loan Trust 2005-3 (the "Issuers").

2.      The Indenture Trustee seeks the Court's instruction regarding VCG Securities LLC's ("VCG") attempt to appoint Odyssey Education Resources LLC ("Odyssey") as a servicer or special servicer for each Issuer under a December 30, 2014 servicing agreement (the "Odyssey Agreement").[1] VCG holds all, or the majority, of the beneficial interest in each Issuer and is attempting to act through the owner trustee to (1) appoint Odyssey as servicer or special servicer and (2) direct

---

[1] A true and correct copy of the Odyssey Agreement is attached as Exhibit 1.

1

62-TR-CV-16-5
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

approximately $1.46 million in indenture trust funds to Odyssey.

3.      The Indenture Trustee's rights and responsibilities are contained in an indenture entered into with each Issuer (the "Indentures"). Under the Indentures, the Indenture Trustee maintains certain trust accounts that hold funds for payments to Noteholders and other parties including servicers. In this case, the Indenture Trustee has been instructed to release trust funds to pay numerous invoices from Odyssey, but is concerned that payment of such funds may violate the terms of the Indentures and harm the Noteholders.

4.      Among the Indenture Trustee's concerns is the fact that Odyssey does not appear to have actually performed any services to benefit the Noteholders. Additionally, Odyssey's appointment appears to alter the current servicing arrangements in a way that requires, at the very least, Rating Agency Confirmation and Noteholder consent. Lastly, the Odyssey Agreement grants Odyssey the power to purchase trust assets at below-market value, which creates a potential for self-dealing.

5.      The Indenture Trustee seeks the Court's instruction on three issues. First, the Indenture Trustee seeks instruction regarding whether, under the Governing Agreements,[2] Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding, such that the Indenture Trustee should release funds necessary to compensate Odyssey for any future services performed.

6.      Second, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding how to resolve certain conflicts between the Odyssey Agreement and the Governing Agreements.

---

[2] The "Governing Agreements" include, for each Issuer respectively, the Trust Agreement, Indenture, the Servicing Agreement, the Administration Agreement and the Special Servicing Agreement.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

7.      Third, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding whether to release the funds necessary to pay Odyssey's outstanding invoices, although Odyssey has not provided the Administrator or Indenture Trustee any evidence that it has performed any services for the Issuers, and the Indenture Trustee has not received any funds for forwarding to Noteholders generated by Odyssey's alleged servicing activities.

### Jurisdiction and Venue

8.      The Indenture Trustee is a national banking association and has its principal corporate trust office in St. Paul, Minnesota. This Court has jurisdiction *in rem* over this Petition under Minn. Stat. § 501C.0201 because the Indenture Trusts' assets are administered by and through the Indenture Trustee's St. Paul corporate trust office.

9.      This petition is properly venued in this Court pursuant to Minn. Stat. § 501C.0207(2)(ii).

### Issuance of Student Loan-Backed Notes

10.      Each Issuer is a Delaware Statutory Trust for which Wilmington Trust Company acts as the current trustee (the "Owner Trustee").

11.      The Issuers were created to facilitate the issuance and sale of notes (the "Notes") backed by private student loans (the "Loans") to investors (the "Noteholders"). To facilitate this process, each Issuer pledged its interest in the Loans to the Indenture Trustee under an Indenture.[3] The Notes entitle the Noteholders to a portion of the cash flows generated by repayment of the Loans.

12.      Each Issuer also retained an interest in any residual cashflow generated

---

[3] A true and correct copy of the Indenture relating to National Collegiate Student Loan Trust 2005-3 is attached as Exhibit 2. The terms of the 2005-3 Indenture relevant to this Petition are substantially similar to those of the other Indentures.

3

62-TR-CV-16-5
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

by the Loans after the Notes are paid in full.

**Additional Relevant Parties**

13.    In addition to the Owner Trustee, the operations of each Issuer and Indenture Trust are carried out by numerous parties including the Indenture Trustee, Servicers, a Special Servicer, and an Administrator.

14.    U.S. Bank is the Indenture Trustee of, and is responsible for administering, each Indenture Trust. This includes holding deposits received from the Servicers or Special Servicer, making distributions to Noteholders in accordance with reports received from the Administrator, and making reports or other information received from various parties available to Noteholders.

15.    The Pennsylvania Higher Education Assistance Agency ("PHEAA") acts as the primary Servicer for each Issuer. Each Servicer collects principal and interest payments on the Loans from the borrowers and remits those payments to the Indenture Trustee for distribution to Noteholders.

16.    First Marblehead Education Resources, Inc. ("First Marblehead") was the original Special Servicer and U.S. Bank was the back-up Special Servicer for each Issuer under the Special Servicing Agreement dated March 1, 2009 (the "Special Servicing Agreement").[4] When First Marblehead later resigned, U.S. Bank succeeded First Marblehead as Special Servicer. Under the Special Servicing Agreement, the Special Servicer provides certain services for Loans that are more than 30 days delinquent. U.S. Bank later contracted with Transworld Systems Inc. ("TSI") to act as Sub-Servicer and with Turnstile Capital Management, LLC ("TCM") to act as Special Sub-Servicer for each Issuer.

17.    GSS Data Services Inc. ("GSSDS") acts as the Administrator for each Issuer (the "Administrator") under an Administration Agreement (collectively, the "Administration Agreements").[5] The Administrator performs certain duties under

---

[4] A true and correct copy of the Special Servicing Agreement is attached as Exhibit 3.

[5] A true and correct copy of the Administration Agreement relating to National Collegiate Student Loan

4

the Governing Agreements including directing payment of expenses of the Issuers and creating monthly reports to Noteholders.

18.     VCG holds all, or the majority, of the beneficial interest in each Issuer. As the Issuers' owner, VCG has instructed the Owner Trustee to take certain actions with respect to Odyssey and the Odyssey Agreement. Upon information and belief, VCG owns, controls, or is otherwise affiliated with Odyssey.

### The Odyssey Agreement

19.     On December 30, 2014, VCG directed the Owner Trustee to enter into the Odyssey Agreement, which purports to appoint Odyssey as a "Servicer" for each Issuer. Before this, neither the Administrator nor the Indenture Trustee was involved in or aware of the negotiation or execution of the Odyssey Agreement.

20.     While the Odyssey Agreement purports to appoint Odyssey as a "Servicer," the Odyssey Agreement allows Odyssey to perform certain collection and enforcement services with respect to Loans that are more than 30 days delinquent. The Special Servicing Agreement also provides for U.S. Bank as the Special Servicer to perform similar services with respect to Loans that are more than 30 days delinquent. As a result, it is unclear whether the Odyssey Agreement appoints Odyssey as a Servicer or replacement Special Servicer. This distinction is significant because the procedures for appointing a Servicer differ from those for appointing a replacement Special Servicer.

21.     A Servicer cannot be properly appointed unless 10 days' prior notice of the appointment is provided to the Rating Agencies and, during the 10 days, none of the Rating Agencies notify the Administrator or the Indenture Trustee in writing that the appointment will result in a reduction or withdrawal of the Notes' current rating.[6]

---

Trust 2005-3 is attached as Exhibit 4. The terms of the 2005-3 Administration Agreement relevant to this Petition are substantially similar to those of the other Administration Agreements.

[6] *See, e.g.*, Ex. 2 at A-20, A-23 (defining "Rating Agency Condition" and "Servicer"). Additionally, to the extent the Odyssey Agreement would increase the amount of servicing fees being paid, the Indentures require that the Rating Agencies be given 10 days' prior notice and, during the 10 days, none of the

22.    A replacement Special Servicer cannot be properly appointed without written confirmation from each Rating Agency (other than Fitch, Inc.) that the appointment will not result in a reduction or withdrawal of the Notes' current rating.[7] Here, to the extent Odyssey is able to service Loans pursuant to the Odyssey Agreement, it will effectively replace U.S. Bank as Special Servicer as to such Loans.[8]

23.    On February 4, 2015, the Administrator received a letter from VCG requesting that the Administrator acknowledge the Odyssey Agreement.[9] This letter stated that "the Rating Agency Condition has been satisfied." This letter, however, did not attach or describe the purported notice and did not attach or describe any confirmation from the Rating Agencies that the appointment would not result in a rating reduction or withdrawal. Neither the Administrator nor the Indenture Trustee was involved in or aware of the purported satisfaction of the Rating Agency Conditions with respect to the Odyssey Agreement. Thus, it is unclear if the Rating Agency Conditions for appointment of Odyssey as a Servicer have been satisfied, much less the more stringent conditions for replacement of a Special Servicer.

24.    The Odyssey Agreement also materially alters how Loans may be released from the Indentures. The Odyssey Agreement permits Odyssey to purchase defaulted Loans at below-market prices, which is not allowed by any of the other servicing agreements.

25.    Another potential defect in Odyssey's appointment as Servicer is that Odyssey never obtained Noteholder consent of the appointment. To the extent that Odyssey's appointment would waive, amend, modify, supplement, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder

---

Rating Agencies notify the Administrator or the Indenture Trustee in writing that such action will result in a reduction or withdrawal of the Notes' current rating. *See id.* at A-23 (defining "Servicing Fees").
[7] *See, e.g.,* Ex. 3 at § 6(E).
[8] Additionally, a failure by the Issuers to send Loans that are more than 30 days delinquent to U.S. Bank as Special Servicer would violate the Special Servicing Agreement.
[9] A true and correct copy of this letter is attached as Exhibit 5.

consent.[10] Here, because all Loans are currently being serviced by the current Servicer and Special Servicer, it is unclear what Loans would be available for Odyssey to service. To the extent Odyssey's servicing would amend, modify, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder consent.

26.     On February 10, 2015, the Administrator responded to VCG's letter by informing VCG that Odyssey was not an approved servicer because various preconditions to its appointment had not been fulfilled.

27.     On March 23, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator stating that it was forbidden from having any communication regarding Odyssey with PHEAA or any Rating Agency. The letter also stated that the Administrator should not take any action that would cause or allow any defaulted Loan to be transferred to the Special Servicer, and that it should not hire any entity to service defaulted Loans.

28.     On October 1, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator instructing it to "cease and desist" with giving PHEAA any direction with respect to the servicing of defaulted Loans.

### The Odyssey Invoices

29.     On December 8, 2015 the Issuers'/VCG's counsel, Mr. Lance Gotthoffer, emailed the Administrator invoices that sought "Reimbursement of Expenses" purportedly incurred by Odyssey for each Issuer during each month of 2015.[11]

30.     On December 10, 2015, the Administrator responded to Mr. Gotthoffer's email by requesting a detailed description of the expenses for which Odyssey was seeking reimbursement.[12]

---

[10] *See, e.g.,* Ex. 2 at § 3.07(c) ("Issuer shall not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the consent of the Indenture Trustee and the Interested Noteholders"); *see also id.* at A-4 (defining "Basic Documents" to include "Servicing Agreements").
[11] True and correct copies of this email and all of the 2015 invoices are attached hereto as Exhibit 6.
[12] A true and correct copy of this email is attached as Exhibit 7.

62-TR-CV-16-5
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

31.     Mr. Gotthoffer responded on December 11, 2015 that further detail was not required under the Odyssey Agreement, and that none would be provided unless the Administrator could direct him "to a provision in [the Odyssey Agreement] requiring Odyssey to provide the detailed explanation of expenses requested in [the Administrator's] email[.]"[13]

32.     The Administrator's outside counsel, Kutak Rock LLP, wrote Mr. Gotthoffer on December 16, 2015, stating that Odyssey had not been validly appointed as Servicer and, therefore, Odyssey's invoices would not be paid.

33.     In addition to Odyssey's 2015 invoices, Odyssey has subsequently sent the Administrator invoices for January and February of 2016.[14] The Odyssey invoices received to date total $1.46 million.[15]

34.     No documentation or backup for the expenses allegedly incurred by Odyssey has been provided to the Administrator as of the date this Petition was filed.

35.     As of the filing of this Petition, the Indenture Trustee has not received any proceeds from Odyssey's purported servicing of the Loans. If Odyssey serviced any Loans during 2015 or later, it should have remitted monies collected to the Indenture Trustee for disbursement to the Noteholders.

### Threatened Litigation

36.     On December 23, 2015, Mr. Gotthoffer sent a draft complaint to Kutak Rock LLP, counsel to the Administrator, naming the Administrator and the Indenture Trustee as defendants. Mr. Gotthoffer stated that the complaint would be filed unless the Odyssey invoices were paid by December 28, 2015.

37.     The draft complaint sought to compel the Indenture Trustee and

---

[13] *See id.*

[14] A true and correct copy of the January 2016 invoices are attached hereto as Exhibit 8. The February 2016 invoices were received too late to be included in the Monthly Issuer Order for the February distribution date.

[15] The invoices attached as Exhibits 6 and 8 total $1.35 million through January, 2016. With the addition of the February, 2016 invoices, Odyssey's outstanding invoices to date total $1.46 million.

62-TR-CV-16-5
Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

Administrator to pay Odyssey's outstanding invoices. The draft complaint also asserted a claim against the Administrator seeking indemnification under the Administration Agreement. Lastly, the draft complaint asserted a tortious interference claim against the Indenture Trustee for "tortiously interfer[ing] with, and caus[ing] [the Administrator] to breach, the Administration Agreement."

### Orders to Pay Odyssey Invoices

38.    On January 14, 2016, VCG sent an "Officers Certificate" to the Indenture Trustee attesting that the all conditions precedent for the execution of the Odyssey Agreement had been satisfied and requesting that the Indenture Trustee acknowledge the Odyssey Agreement.[16]

39.    Also on January 14, 2016, Mr. Gothoffer's law firm, Chaitman LLP, sent an "Opinion of Counsel" to the Indenture Trustee in which Chaitman LLP opined that "the execution of the Odyssey Agreement is authorized and/or permitted by the applicable Indentures and that all conditions precedent to such execution have been complied with."[17]

40.    On January 20, 2016, the Owner Trustee, at the direction of the Issuers/VCG, sent an "Issuer Order" to the Administrator that instructed the Administrator to (1) acknowledge the Odyssey Agreement, (2) cause the payment of the Odyssey invoices that had been submitted, (3) cause the payment of all future Odyssey invoices, and (4) prepare and execute all additional documents and take all action necessary to cause the payment of all current and future Odyssey invoices.[18] Under Section 1(c) of the Administration Agreements, the Administrator is not obligated to take any action with respect to a non-ministerial action unless the Administrator shall have received instructions from the Indenture Trustee under the Indenture or from the Owner Trustee or the owners of the respective Issuer under the

---

[16] A true and correct copy of this letter is attached as Exhibit 9.
[17] *See id.* at Exhibit C.
[18] A true and correct copy of this Issuer Order is attached as Exhibit 10.

9

Trust Agreement.

41.    Based solely upon the "Issuer Order" instruction to cause the payment of the Odyssey invoices, on February 17, 2016, the Administrator sent the Indenture Trustee a Monthly Issuer Orders ("MIOs") to release the funds necessary to pay the Odyssey invoices.[19] In a letter accompanying the MIO, the Administrator also expressed its concerns as to whether Odyssey was validly appointed as a Servicer or a replacement Special Servicer under the Indentures or the Special Servicing Agreement and that the Odyssey invoices lack sufficient authorization, detail, and backup to warrant payment. The Administrator stated that, "[a]bsent the Issuer Order, the Administrator would not have submitted the Invoices for payment[.]"

### Request for Relief

WHEREFORE, pursuant to the provisions of Minn. Stat. §§ 501C.0201, 501C.0202 and all other applicable law, the Indenture Trustee respectfully requests that this Court:

a.   Make and enter herein an Order designating the time and place when the respective parties in interest may be heard upon the matters set forth in this Petition, and that notice of the hearing be served in the manner specified in the accompanying Order and as provided by Minn. Stat. § 501C.0203 subdivision 1.

b.   Undertake to represent all parties in interest who are unascertained or not in being, or who are minors or incapacitated, pursuant to the provisions of Minn. Stat. § 501C.0305.

c.   At such designated time and place make a further Order as follows:

i.   Determining whether, under the Governing Agreements, Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding;

---

[19] A true and correct copy of the MIO and accompanying letter (absent attachments) are attached as Exhibit 11.

62-TR-CV-16-5
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

ii.  If Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, resolving the conflicts and inconsistencies that arise between the Governing Agreements and the Odyssey Agreement.

iii. Determining that the Administrator should not provide for payment of the Odyssey invoices in its Monthly Issuer Orders submitted as of the date this Petition was filed;

iv.  Determining that the Administrator should not provide for the payment of any Odyssey invoices submitted in the future unless the Odyssey Agreement is determined to be valid and binding under the Governing Agreements and Odyssey provides to the Administrator invoices that contain documented, verifiable descriptions of the work performed by Odyssey and funds are received by the relevant trust;

v.   Determining that the Indenture Trustee should not pay, or cause the release of, any funds to Odyssey pursuant to the Odyssey Agreement or any Monthly Issuer Order;

vi.  Determining that the Indenture Trustee has acted without willful misconduct, negligence or bad faith in ascertaining whether the requirements under the applicable Indentures have been satisfied;

vii. Directing that the Indenture Trustee and the Issuers shall not be subject to the continuing supervision of the Court for the purposes of Minn. Stat. § 501C.0205 or General Rule of Practice 417.02; and

viii. Granting such other and further relief as the Court may deem

11

62-TR-CV-16-5
Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

lawful, just and proper.


DATED: February 18, 2016

By: ___ /s/ Thomas F. Berndt ___
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as*
*Indenture Trustee*

62-TR-CV-16-5
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

## Acknowledgement

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

DATED: February 18, 2016

By:   */s/ Thomas F. Berndt*
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee*

Filed in Second Judicial District Court
2/30/2006 1:09:15 PM
Ramsey County, MN

# EXHIBIT 1

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

# SERVICING AGREEMENT

This Servicing Agreement, dated as of December 30, 2014 (this "Agreement"), is entered into by and among Odyssey Education Resources LLC ("Odyssey"), as the Servicer (together with its successors and assigns, the "Servicer"), and each of the Trusts listed on Schedule A attached hereto (the "Trusts"). Any capitalized terms used, but not defined herein shall have the meaning given to such term set forth in the Basic Documents (as that term is defined in the Indenture applicable to each such Trust, the "Basic Documents").

WHEREAS, the Trusts desire to, from time to time, dispose of certain defaulted Financed Student Loans;

WHEREAS, pursuant to the Indenture applicable to each Trust, Financed Student Loans may only be sold, transferred or otherwise disposed of to a servicer at a disposition price specified under the applicable Servicing Agreement;

WHEREAS, each of the Trusts has previously appointed other entities as the servicer of certain Financed Student Loans and accordingly Odyssey is likely not performing all of the servicing responsibilities with respect to the Financed Student Loans;

WHEREAS, none of the existing servicers of the Financed Student Loans nor their applicable Servicing Agreements have a mechanism currently in place to dispose of Financed Student Loans;

WHEREAS, Odyssey will utilize employees and agents (appointed from time to time by it, as provided herein) who are experts in the management of collections on and the disposition of Financed Student Loans;

WHEREAS, each of the Trusts is appointing Odyssey as a Servicer under each Trust's respective Trust Agreement, to perform certain limited duties with respect to certain Financed Student Loans owned by the Trusts that are defaulted or Loans Eligible For Sale (as defined below); and

WHEREAS, Servicer is being engaged pursuant hereto to purchase Loans from each Trust as directed or permitted by the applicable Trust.

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties agree as follows:

Section 1.    Definitions.    Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Basic Documents. For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below:

"Loans Eligible For Sale" means Financed Student Loan(s) owned by a Trust for which the borrower of such Financed Student Loan has failed to repay such Financed Student Loan according to the terms agreed to in the applicable controlling loan documents and agreements, and such Borrower(s) shall have been delinquent in its repayment obligations for no less than 180 days.

"Defaulted Loan" means any Financed Student Loan owned by a Trust for which the borrower of such Financed Student Loan has failed to repay such Financed Student Loan according to the terms agreed to in the applicable controlling loan documents and agreements, provided however, that such Borrower shall have been delinquent in its repayment obligations for no less than 31 days;

"Default Prevention Services" means such services determined by the Servicer to be desirable to collect and seek enforcement of Financed Student Loans that are greater than 30 days past due and less than 180 days past due. Default Prevention Services may include both telephonic and mail correspondence and related monthly reporting.

Filed in Second Judicial District Court
2/17/2016 1:09:15 PM
Ramsey County, MN

"Early Awareness Services" means such services determined by the Servicer to be desirable to reduce the number and percentage of Financed Student Loans becoming delinquent in the repayment process prior to the initial payment due date, including without limitation, services that are intended to alert borrowers and co-borrowers to their repayment obligations, available borrower benefits (such as ACH automatic payments) and contact information for the Servicer. Early Awareness Services may include both telephonic and mail contacts, as well as address verification and skip tracing.

Section 2.        Appointment:        Servicing Duties.

A. Appointment. Each of the Trusts hereby hires, designates and appoints the Servicer as a Servicer under each Trust's applicable, respective Indenture to perform the servicing duties (as defined below) with respect to Loans Eligible For Sale and Defaulted Loans, and the Servicer accepts such appointment and agrees to perform such duties with respect to the Loans Eligible For Sale and Defaulted Loans in accordance with the terms of this Agreement and each Indenture.

B. Services. The Servicer shall take such actions as it shall deem reasonably necessary or appropriate to administer and oversee the enforcement and collection of Loans Eligible For Sale and Defaulted Loans, and to provide recommendations to the relevant Trust with respect to those Loans Eligible For Sale to be sold by the terms hereof, to maximize the collection of amounts payable on the Financed Student Loans (collectively, the "Services"), including without limitation:

(i)        Retaining and entering into agreements with licensed collection agencies, loan brokers and other legally authorized persons (the "Subservicers") engaged in providing default prevention and collection services and loan sale services, in form and substance satisfactory to the Servicer, pursuant to which the Subservicers, for and on behalf of the applicable Trust, will contact borrowers with respect to the Loans Eligible For Sale and Defaulted Loans, and seek enforcement and collection of such Loans Eligible For Sale and Defaulted Loans, including without limitation Early Awareness Services and Default Prevention Services when applicable;

(ii)        At the sole discretion of the Servicer, (a) performing periodic audits of Subservicers for compliance and performance reviews and (b) providing oversight of the activities of Subservicers with regard to account management, litigation assistance, and/or settlement strategies;

(iii)        Replacing any Subservicer who, in the sole judgment of the Servicer, is deemed to be deficient or negligent in performing the duties outlined in its subservicing agreement with the Servicer;

(iv)        Requiring in the applicable subservicing agreement that the Subservicers provide certain monthly reports to the Servicer with respect to Loans Eligible For Sale and Defaulted Loans serviced by such Subservicer, in each case, in a form and substance satisfactory to the Servicer;

(v)        With respect to Loans Eligible For Sale and Defaulted Loans, reviewing claim packages as described in subparagraph (xi);

(vi)        With respect to Loans Eligible For Sale and Defaulted Loans being serviced by the Servicer or Subservicers, remitting within two (2) days of receipt to the Odyssey Collection Account (as hereinafter defined) for the receipt of all cash collected by Servicer and for the receipt of collections from a Subservicer for the benefit of the respective Trusts.

(vii)        With respect to Loans Eligible For Sale or Defaulted Loans (a) roll or reassign such loans being serviced by Servicer into a default recovery queue for collection effort or a queue for sale efforts in accordance with the provisions of Section 2(C) below, (b) direct any Subservicer to roll or reassign any loans that become Charge-Off Loans to the Servicer for

Filed in Second Judicial District Court
2/02/2006 1:09:15 PM
Ramsey County, MN

assignment into the queue for sale efforts, and (c) remit within two (2) days of receipt to the Odyssey Collection Account (as hereinafter defined) for the receipt of collections for the benefit of the respective Trusts, as their interests may appear, all cash collected on all Loans Eligible For Sale in the queue for sale until such time as the loan is sold.

(viii) Reporting to the relevant Trust all Loans Eligible For Sale being held in the queue for purchase; soliciting direction from the Trust as to which loans shall be sold pursuant to the terms of Section 2(C) below.

(ix) Conduct the sale of all Loans Eligible For Sale in accordance with the provisions or Section 2(C) below.

(x) Establishing and maintaining an account or accounts (the "Odyssey Collection Account") in the name of the Indenture Trustee (or its agent or custodian), for benefit of the applicable secured parties of the Trusts under the respective Indentures, for the deposit by Servicer and any Subservicer of net collections (including all net proceeds of any sale of Loans Eligible For Sale in accordance with the provisions of 2(C) below) on all Loans Eligible For Sale and Defaulted Loans serviced by Servicer or Subservicer for the respective Trust and in connection therewith, preparing or causing to be prepared such control agreement or agreements as may be necessary or desirable to maintain and preserve the lien and security interest therein of the Indenture Trustee under the respective Indentures;

(xi) Reviewing claim packages prepared by any Servicer or Subservicer with respect to Loans Eligible For Sale and Defaulted Loans to confirm, on the basis of such review, that (a) the Servicer or Subservicer has complied with applicable servicing guidelines and (b) the loan originator has complied with applicable program guidelines;

(xii) Receiving reports from Servicers and Subservicers related to payments with respect to Loans Eligible For Sale and Defaulted Loans and updating records with respect to Financed Student Loans as interest and other charges accrue and amounts are collected;

(xiii) Remitting or causing the Subservicers to remit net collections received on Loans Eligible For Sale and Defaulted Loans to the Odyssey Collection Account;

(xiv) Retaining counsel on behalf of the applicable Trust (whether directly or through collection agencies) to further pursue enforcement and collection of Loans Eligible For Sale and Defaulted Loans, including through litigation and bankruptcy or probate proceedings; and

(xv) Negotiating any settlement or compromise of any claim with respect to a Loans Eligible For Sale or Defaulted Loans, which in the reasonable judgment of the Servicer are more likely to produce greater proceeds of collection than by virtue of a forbearance, payment management or other accommodation with the borrower; and

(xvi) At the sole discretion of the Servicer, identifying, recommending, selling, transferring, exchanging, purchasing or otherwise disposing of Loans Eligible For Sale in accordance with the Basic Documents.

For the avoidance of doubt the parties hereto hereby acknowledge and agree that nothing in this Agreement is intended to nor does it amend the applicable Trust Agreement, Indenture or Administration Agreement for each Trust or limit in any way the Trusts' rights thereunder, including without limitation, the right to direct or restrict the activities of the Servicer.

C. Purchase of Loans Eligible For Sale. The Servicer shall take all such action, as it shall deem reasonably necessary or appropriate to purchase the Loans Eligible For Sale, including without limitation:

Filed in Second Judicial District Court
2/07/2006 1:08:15 PM
Ramsey County, MN

(i)     Entering into custodial agreements either directly or through agents for the purpose of perfecting a security interest in the Loans Eligible For Sale and to provide for the safekeeping of the Loans Eligible For Sale and all documents and information relating to the Loans Eligible For Sale;

(ii)    Preparing all necessary sale documentation including, but not limited to, appropriate terms required for each bidder, the loan purchase agreement and other related documentation required to memorialize and accomplish the sale of the Loans Eligible For Sale;

(iii)    In its sole discretion, determining the purchase price for each such Loan Eligible For Sale that it determines to purchase pursuant to the terms hereof based on one of the two following methods: (a) 10% less than the highest bid received pursuant to the Servicer marketing the Loans Eligible For Sale for sale to at least three (3) qualified bidders and conducting the sale process in a manner that, in the sole judgment of the Servicer, will yield the highest and best net proceeds to be paid in exchange for the Loans Eligible For Sale, provided however, that with respect to such sale process, Servicer shall, at a minimum: (i) provide an information packet ("Information Packet") applicable to each sale which describes the loans offered for sale and contains such other customary information applicable to such sale; (ii) in a good faith effort to maximize the proceeds to the Trust from the sale of the Loans, invite a sufficient number of qualified bidders under the circumstances to participate in such sale, and in no event shall the Servicer receive less than three (3) bids from qualified bidders; (iii) establish a time period between the distribution of the Information Packet and the acceptance of bids to allow the prospective bidders to research and analyze the Loans Eligible For Sale; and (iv) hold the sale at a convenient time and in a convenient location or (b) 10% less that the average value established pursuant to the Servicer engaging two (2) reputable appraisers, in the business of appraising loans, to appraise the Loans Eligible for Sale which the Servicer intends to purchase;

(iv)    Notifying the Relevant Trust and the Administrator that each of the Loans Eligible For Sale sold pursuant to the Loan Sale is a Liquidated Student Loan pursuant to the Basic Documents;

(v)    Simultaneous with the Loan Sale, remitting or causing the Subservicers to remit the Liquidation Proceeds and all Recoveries associated with the Liquidated Student Loans to the Odyssey Collection Account.

Section 3.    Incorporation.  As of the date hereof, the definition of "Servicing Agreement" in each of the Indentures shall include this Agreement, the definition of "Servicer" in each of the Indentures shall include the Servicer and any Servicing Fee and other fees and expenses payable under this Agreement to the Servicer shall be a "Servicing Fee" for purposes each of the Indentures.

Section 4.    Subservicers.  In carrying out its duties under this Agreement with respect to the Loans Eligible For Sale and Defaulted Loans, the Servicer may retain and employ Subservicers to perform any of the Services with respect to the Financed Student Loans owned by any of the Trusts, and to commence any actions or proceedings the Subservicers deem necessary or appropriate in connection with such enforcement or collection efforts on such Loans Eligible For Sale and Defaulted Loans.

Section 5.    Servicing Fee; Reimbursement for Expenses.  As compensation for the performance of the Servicer's obligations under this Agreement and as reimbursement for its expenses related thereto, the Servicer shall be entitled to a fee and expense reimbursement (the "Servicing Fee") payable from each Trust in accordance with the related Indenture on each Distribution Date consisting of:

A.    Reimbursement by each Trust for all of the Servicer's expenses incurred in performing its obligations hereunder for such Trust, including all fees and expenses of all Subservicers and other persons appointed as agents of the Servicer pursuant to this Agreement and any other expenses incurred by the

Filed in Second Judicial District Court
2/10/2006 1:08:15 PM
Ramsey County, MN

Servicer on behalf of each Trust, including costs and expenses incurred by the Servicer in establishing and maintaining the Odyssey Collection Account; provided that the fees and expenses of Subservicers with respect to collections on Loans Eligible For Sale and Defaulted Loans shall be paid from such collections prior to remittance to such Odyssey Collection Account, as described in Section 2(B)(vii), 2(B)(x) and 2(c)(vii) above. The reimbursement described in this Section 5(A) with respect to Default Prevention Services (but not with respect to Early Awareness Services) shall not exceed the dollar amount listed for each Trust on Schedule B, attached hereto, in the aggregate per calendar month per respective Trust. The reimbursement described in this Section 5(A) with respect to Early Awareness Services shall not exceed the dollar amount listed for each Trust on Schedule C attached hereto, in the aggregate for each such Trust until its respective Indenture is discharged.

B.   In carrying out the foregoing duties or any of its other obligations under this Agreement, the Servicer may charge a fee for any collection services that it provides and enter into transactions or otherwise deal with any of its affiliates, including, without limitation, collection agency which affiliates may also charge reasonable fees and receive other forms of remuneration, provided however, that the terms of any such transaction or dealings with an affiliate shall be, in the Servicer's opinion, no less favorable to the Trusts than would be available from unaffiliated parties.

Section 6.   Term of Agreement: Resignation and Removal of Servicer.

A. Term. This Agreement shall continue in force with respect to each Trust until the dissolution of such Trust and the payment in full of the Notes under the related Indenture, upon which event this Agreement shall automatically terminate with respect to that Trust.

B. Resignation. Subject to Section 6(D) of this Agreement, the Servicer may resign its duties hereunder by providing the Trust, the Administrator and the Indenture Trustee with at least 10 days' prior written notice.

C. Removal for Cause. Subject to Section 6(D) of this Agreement, the Indenture Trustee shall have the right to remove the Servicer with the prior written consent of the Trust, by delivering to the Servicer written notice of termination if any of the following events shall occur:

(i)   The Servicer shall default in the performance of any of its duties under this Agreement and, after written notice of such default, shall not cure such default within forty-five days (or such longer period as shall be reasonably satisfactory to the Indenture Trustee);

(ii)   A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Servicer under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Servicer or any substantial part of its property or order the winding-up or liquidation of its affairs; or

(iii)   The Servicer shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due.

The Servicer agrees that if any of the events specified in clauses (ii) or (iii) of this Section shall occur, it shall give written notice thereof to the Trust, each of the Rating Agencies and the Indenture Trustee within two Business Days after the happening of such event. Concurrently with the giving of such notice as provided above (and in any event no later than five (5) Business Days after receipt of such notice of

Filed in Second Judicial District Court
2/07/2006 1:08:15 PM
Ramsey County, MN

termination), the Servicer shall identify any Loans Eligible For Sale and Defaulted Loans still being serviced by it hereunder.

D. Succession. No resignation or removal of the Servicer pursuant to this Section shall be effective until a successor Servicer (which Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Servicer is bound hereunder. The appointment of any successor Servicer shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

Section 7.      Action upon Termination. Resignation or Removal.   Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Servicer pursuant to Section 6(B) or Section 6(C) of this Agreement, the Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Financed Student Loans then in the custody of the Servicer pursuant to this Agreement. In the event of the resignation or removal of the Servicer pursuant to Section 6 of this Agreement, the Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and take all reasonable steps requested to assist the Trusts in making an orderly transfer of the duties of the Servicer to the successor Servicer, as applicable.

Section 8.      Representations and Warranties.   The Servicer hereby makes the following representations and warranties to each of the Trusts:

(i)      Organization and Good Standing. The Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

(ii)      No Violation. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Servicer. The Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Servicer.

(iii)      Authorization and Enforceability.   The execution and delivery by the Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Servicer with the terms hereof are within the powers of the Servicer

Filed in Second Judicial District Court
2/07/2006 1:09:15 PM
Ramsey County, MN

and have been duly authorized by all necessary action on the part of the Servicer. All organizational resolutions and consents necessary for the Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Servicer and constitutes the legal, valid and binding obligation of the Servicer enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Servicer,

(iv)    Approvals and Permits.   The Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Servicer to perform its obligations hereunder.

(v)     No Litigation.   No litigation is pending or, to the best of the Servicer's knowledge, threatened against it, which, if determined adversely to the Servicer would prohibit the Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Servicer.

(vi)    Standard of Care.   In exercising its duties hereunder, Servicer agrees to use at least the same degree of care that it would use if the Defaulted Loans and Loans Eligible For Sale were Servicer's own property, but no less than a reasonable degree of care.

Section 9.     Indemnification.   The Servicer will indemnify each of the Trusts, the Owner Trustee and the Indenture Trustee and their respective officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Indenture Trustee (as applicable) and any Administrator, Servicer, Sub-Servicer or other agent of or servicer provider to the Trust and any of their agents, arising out of the willful misconduct, gross negligence or bad faith of the Servicer (or its agents) in the performance of the Servicer's duties contemplated by this Agreement; provided that neither the Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Trust, the Administrator or the Indenture Trustee or in accordance with this Agreement. To the extent any indemnification amounts are not paid by the Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Financed Student Loans then owned by each Trust.

Section 10.     Records: Inspection.   The Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours. The Servicer hereby grants the Indenture Trustee the right, for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Servicer and the Indenture Trustee. All expenses associated with the

Filed in Second Judicial District Court
2/05/2006 1:08:15 PM
Ramsey County, MN

performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(A).

Section 11.     Reporting; Additional Information to be Furnished. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator, on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Loans Eligible For Sale and Defaulted Loans in a form satisfactory to the Administrator. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator on behalf of the Trusts an electronically transferred data file containing recovery data for Loans Eligible For Sale and Defaulted Loans owned by each respective Trust and other information as required by Regulation AB, each for investor reporting purposes. The Servicer shall furnish to the Administrator on behalf of the Trusts from time to time such additional information regarding the Loans Eligible For Sale and Defaulted Loans as the Administrator on behalf of the Trusts shall reasonably request.

Section 12.     Subservicing Agreement. The Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Financed Student Loan and its performance. Each subservicing agreement shall be terminable by the Servicer upon thirty days written notice, and shall provide that any successor to the Servicer shall succeed to the Servicer thereunder.

Section 13.     Regulation AB.   On or before September 15 of each calendar year beginning in 2015, the Servicer shall deliver to the Administrator any reports, Servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Servicer is required to deliver to the Administrator the documents described in this Section 13, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 14.     Security Interest.   Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect to the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 15.     Amendments. This Agreement may be amended from time to time by the parties hereto to add additional trusts, provided that any amendment must be accompanied by the written consent of the Trust and upon satisfying the Rating Agency Condition.

Section 16.     Independence of the Servicer. For all purposes of this Agreement, the Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Trusts, the Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 17.     No Joint Venture. Nothing contained in this Agreement (i) shall constitute the Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to Incur any obligation or liability on behalf of the others.

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

Section 18.     Other Activities of the Servicer. Nothing herein shall prevent the Servicer or its Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 19.     Notices. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Servicer, to:

Odyssey Education Resources LLC
800 Corporate Drive,
Ft. Lauderdale, FL 33334
Attn: Tom Glanfield

With a copy to:

Cook and Sadorf, PL
1744 N. Belcher Rd., Suite 150
Clearwater, FL 33765
Attn: Rick Sadorf

If to the Trusts, to:

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001
Attn: Corporate Trust Administration

With a copy to:

VCG Securities LLC
407 SE 1st Street
Delray Beach, FL 33483
Attn: Donald Uderitz

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 20.     Notice to Noteholders. Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed Odyssey as Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 21.     Miscellaneous.

A. Successors and Assigns. This Agreement may not be assigned by the Servicer unless such assignment is previously consented to in writing by the Indenture Trustee and unless each Rating Agency, after having been given 10 days prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

hereunder in the same manner the Servicer is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Servicer, without the consent of the Indenture Trustee to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Servicer; provided that such successor organization executes and delivers to the Indenture Trustee and the other parties hereto an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Servicer is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

B. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

C. Headings. The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or intent of this Agreement.

D. Counterparts. This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

E. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

F. Limitation of Liability of Owner Trustee. Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of each of the Trusts, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Trusts have any liability for the representations, warranties, covenants, agreements or other obligations of the Trusts hereunder, as to all of which recourse shall be had solely to the assets of the Trusts. For all purposes of this Agreement, in the performance of any duties or obligations of the Trusts hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the each Trust Agreement of the Trusts.

G. Third Party Beneficiary. The parties hereto acknowledge that the Noteholders, Certificateholders and the Indenture Trustee are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

H. No Petition. The parties hereto will not at any time institute against the Trusts any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Trusts under any Basic Documents as defined in the Indenture.

I. Grant. Each Trust hereby acknowledges that this Agreement is a "Servicing Agreement" for all purposes of its applicable Indenture. Each Trust hereby grants to the Indenture Trustee, as trustee under each Indenture for the benefit of the Noteholders and other secured parties as applicable under the applicable Indenture, all of its right, title and interest in and to (i) the Agreement; and (ii) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of the foregoing. The Administrator on behalf of each Trust shall take all steps necessary to ensure the perfection and priority of the Indenture Trustee's security interest in the foregoing collateral.   By its signature below, the Indenture Trustee on behalf of the Noteholders and other secured parties as applicable, acknowledges such Grant.

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

ODYSSEY EDUCATION RESOURCES LLC, as the Servicer

By: _____

Name: Donald Uderitz

Title: Authorized Signatory

Each of the Trusts listed on Schedule A, attached hereto

By: WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By: _____

Name: Dorri Costello

Title: Assistant Vice President

ACKNOWLEDGED:

GSS DATA SERVICES, INC., as Administrator

By. _____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for each of the Indentures listed on Schedule A attached hereto

By. _____
Name:
Title:

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

## SCHEDULE A

Trusts:

- The National Collegiate Student Loan Trust 2003-1;
- The National Collegiate Student Loan Trust 2004-1;
- The National Collegiate Student Loan Trust 2004-2;
- The National Collegiate Student Loan Trust 2005-1;
- The National Collegiate Student Loan Trust 2005-2; and
- The National Collegiate Student Loan Trust 2005-3.

Indentures:

Each of the following Indentures, as amended or supplemented, entered into by and between U.S. Bank National Association, as Indenture Trustee and:

- The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
- The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
- The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
- The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
- The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005; and
- The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005.

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

## SCHEDULE B

[Schedule of Default Prevention Services Reimbursement Limits per Trust by Calendar Month]

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

SCHEDULE C

[Schedule of Early Awareness Services Reimbursement Limits per Trust by Calendar Month]

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

# EXHIBIT 2

62-TR-CV-16-5

Filed in Second Judicial District Court
2/13/2006 1:08:15 PM
Ramsey County, MN

EXECUTION COPY

INDENTURE

between

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3,
as Issuer

and

U.S. BANK NATIONAL ASSOCIATION,
as Indenture Trustee

Relating To:
The National Collegiate Student Loan Trust 2005-3

Dated as of October 1, 2005

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3

Reconciliation and tie between Trust Indenture Act of 1939, as amended (the "Trust Indenture Act" or "TIA") and this Indenture of Trust, dated as of October 1, 2005.

| Trust Indenture Act Section | Indenture Section |
|---|---|
| Section 310(a)(1) | 6.11 |
| Section 310(a)(3) | 9.08 |
| Section 310(b) | 6.11 |
| Section 313(c) | 3.24, 9.07 |
| Section 314(c) | 8.13 |
| Section 314(d)(1) | 8.13 |
| Section 318 | 9.08 |

_____

NOTE: This reconciliation and tie shall not, for any purpose, be deemed to be a part of the Indenture.

Attention should also be directed to Section 318(c) of the Trust Indenture Act, which provides that the provisions of Sections 310 to and including 317 of the Trust Indenture Act are a part of and govern every qualified indenture, whether or not physically contained therein.

## TABLE OF CONTENTS

Page

### ARTICLE I
Definitions and Usage

SECTION 1.01   Definitions and Usage..................................................................................2

### ARTICLE II
The Notes

SECTION 2.01   Form...........................................................................................................3
SECTION 2.02   Execution, Authentication and Delivery............................................................3
SECTION 2.03   Temporary Notes .......................................................................................4
SECTION 2.04   Registration; Registration of Transfer and Exchange.........................................4
SECTION 2.05   Mutilated, Destroyed, Lost or Stolen Notes.....................................................12
SECTION 2.06   Persons Deemed Owner................................................................................13
SECTION 2.07   Payment of Principal and Interest; Defaulted Interest .......................................13
SECTION 2.08   Cancellation..............................................................................................14
SECTION 2.09   Release of Collateral ...................................................................................15
SECTION 2.10   Book-Entry Notes .......................................................................................15
SECTION 2.11   Notices to Clearing Agency ..........................................................................15
SECTION 2.12   Definitive Notes.........................................................................................16
SECTION 2.13   Tax Treatment...........................................................................................16

### ARTICLE III
Covenants

SECTION 3.01   Payment to Noteholders...............................................................................16
SECTION 3.02   Maintenance of Office or Agency....................................................................17
SECTION 3.03   Money for Payments To Be Held in Trust.........................................................17
SECTION 3.04   Existence...................................................................................................18
SECTION 3.05   Protection of Indenture Trust Estate ...............................................................18
SECTION 3.06   Opinions as to Indenture Trust Estate.............................................................19
SECTION 3.07   Performance of Obligations; Servicing of Financed Student Loans................19
SECTION 3.08   Negative Covenants ....................................................................................21
SECTION 3.09   Annual Statement as to Compliance ...............................................................22
SECTION 3.10   Issuer May Consolidate, etc., Only on Certain Terms.....................................22
SECTION 3.11   Successor or Transferee................................................................................23
SECTION 3.12   No Other Business ......................................................................................24
SECTION 3.13   No Borrowing ...........................................................................................24
SECTION 3.14   Disposing of Financed Student Loans .............................................................24
SECTION 3.15   Guarantees, Loans, Advances and Other Liabilities.........................................25
SECTION 3.16   Capital Expenditures...................................................................................25
SECTION 3.17   Restricted Payments....................................................................................25
SECTION 3.18   Notice of Events of Default ..........................................................................25
SECTION 3.19   Further Instruments and Acts........................................................................25
SECTION 3.20   Additional Covenants..................................................................................26

i

| SECTION 3.21 | Covenant Regarding Financed Student Loans | 26 |
| SECTION 3.22 | Additional Representations of the Issuer | 27 |
| SECTION 3.23 | Issuer Separateness Covenants | 29 |
| SECTION 3.24 | Reports by Issuer | 30 |
| SECTION 3.25 | Rule 144A Information | 31 |

## ARTICLE IV
### Satisfaction and Discharge

| SECTION 4.01 | Satisfaction and Discharge of Indenture | 31 |
| SECTION 4.02 | Application of Trust Money | 32 |
| SECTION 4.03 | Repayment of Moneys Held by Paying Agent | 32 |

## ARTICLE V
### Remedies

| SECTION 5.01 | Events of Default | 32 |
| SECTION 5.02 | Acceleration of Maturity; Rescission and Annulment | 33 |
| SECTION 5.03 | Collection of Indebtedness and Suits for Enforcement by Indenture Trustee | 34 |
| SECTION 5.04 | Remedies; Priorities | 36 |
| SECTION 5.05 | Optional Preservation of the Financed Student Loans | 39 |
| SECTION 5.06 | Limitation of Suits | 40 |
| SECTION 5.07 | Unconditional Rights of Noteholders To Receive Principal and Interest | 40 |
| SECTION 5.08 | Restoration of Rights and Remedies | 40 |
| SECTION 5.09 | Rights and Remedies Cumulative | 41 |
| SECTION 5.10 | Delay or Omission Not a Waiver | 41 |
| SECTION 5.11 | Control by Noteholders | 41 |
| SECTION 5.12 | Waiver of Past Defaults | 41 |
| SECTION 5.13 | Undertaking for Costs | 42 |
| SECTION 5.14 | Waiver of Stay or Extension Laws | 42 |
| SECTION 5.15 | Action on Notes | 42 |
| SECTION 5.16 | Performance and Enforcement of Certain Obligations | 42 |
| SECTION 5.17 | Notice of Defaults | 43 |

## ARTICLE VI
### The Indenture Trustee

| SECTION 6.01 | Duties of Indenture Trustee | 43 |
| SECTION 6.02 | Rights of Indenture Trustee | 45 |
| SECTION 6.03 | Individual Rights of Indenture Trustee | 45 |
| SECTION 6.04 | Indenture Trustee's Disclaimer | 46 |
| SECTION 6.05 | Notice of Defaults | 46 |
| SECTION 6.06 | Reports by Indenture Trustee to Noteholders | 46 |
| SECTION 6.07 | Compensation and Indemnity | 46 |
| SECTION 6.08 | Replacement of Indenture Trustee | 46 |
| SECTION 6.09 | Successor Indenture Trustee by Merger | 47 |
| SECTION 6.10 | Appointment of Co-Trustee or Separate Trustee | 48 |
| SECTION 6.11 | Eligibility; Disqualification | 49 |

SECTION 6.12    Back-up Certification ......................................................................................... 49

### ARTICLE VII
### Noteholders' Lists and Reports

SECTION 7.01    Issuer To Furnish Indenture Trustee Names and Addresses of
                 Noteholders ............................................................................................. 49
SECTION 7.02    Preservation of Information; Communications to Noteholders ..................... 49
SECTION 7.03    Reports by Issuer...................................................................................... 50

### ARTICLE VIII
### Accounts, Disbursements and Releases

SECTION 8.01    Collection of Money ................................................................................. 50
SECTION 8.02    Trust Accounts ......................................................................................... 51
SECTION 8.03    General Provisions Regarding Accounts ................................................... 55
SECTION 8.04    Release of Indenture Trust Estate ............................................................ 56
SECTION 8.05    Opinion of Counsel .................................................................................. 56
SECTION 8.06    Cost of Issuance Account.......................................................................... 57
SECTION 8.07    Application of Collections ......................................................................... 57
SECTION 8.08    Reserve Account ...................................................................................... 57
SECTION 8.09    Statements to Noteholders ....................................................................... 59
SECTION 8.10    Pre-Funding Account ............................................................................... 60
SECTION 8.11    Advances.................................................................................................. 61

### ARTICLE IX
### Supplemental Indentures

SECTION 9.01    Supplemental Indentures Without Consent of Noteholders......................... 61
SECTION 9.02    Supplemental Indentures with Consent of Noteholders............................... 62
SECTION 9.03    Execution of Supplemental Indentures ...................................................... 63
SECTION 9.04    Effect of Supplemental Indenture ............................................................. 63
SECTION 9.05    [Reserved] ............................................................................................... 63
SECTION 9.06    Reference in Notes to Supplemental Indentures ........................................ 64
SECTION 9.07    Conformity With the Trust Indenture Act .................................................. 64

### ARTICLE X
### Reporting Requirements

SECTION 10.01   Annual Statement as to Compliance ......................................................... 64
SECTION 10.02   Annual Independent Public Accountants' Servicing Report ........................ 64

### ARTICLE XI
### Miscellaneous

SECTION 11.01   Compliance Certificates and Opinions, etc................................................ 64
SECTION 11.02   Form of Documents Delivered to Indenture Trustee .................................. 65
SECTION 11.03   Acts of Noteholders ................................................................................. 66
SECTION 11.04   Notices, etc., to Indenture Trustee, Issuer and Rating Agencies ................. 66
SECTION 11.05   Notices to Noteholders; Waiver................................................................ 67

SSL-DOCS2 70240931v7

SECTION 11.06   Alternate Payment and Notice Provisions .......................................................67
SECTION 11.07   [Reserved]..........................................................................................................68
SECTION 11.08   Effect of Headings and Table of Contents.........................................................68
SECTION 11.09   Successors and Assigns.......................................................................................68
SECTION 11.10   Separability ........................................................................................................68
SECTION 11.11   Benefits of Indenture..........................................................................................68
SECTION 11.12   Legal Holidays ...................................................................................................68
SECTION 11.13   Governing Law ...................................................................................................68
SECTION 11.14   Counterparts........................................................................................................68
SECTION 11.15   Recording of Indenture ......................................................................................68
SECTION 11.16   Trust Obligations ...............................................................................................69
SECTION 11.17   No Petition ..........................................................................................................69
SECTION 11.18   Inspection............................................................................................................69
SECTION 11.19   Third-Party Beneficiaries...................................................................................70


APPENDIX A          Definitions and Usage

SCHEDULE A          Schedule of Initial Financed Student Loans
SCHEDULE B          Schedule of Subsequent Student Loans
SCHEDULE C          List of TERI Guaranty Agreements
SCHEDULE D          List of Student Loan Purchase Agreements


EXHIBIT A-1          Form of Class A-1 Note
EXHIBIT A-2          Form of Class A-2 Note
EXHIBIT A-3          Form of Class A-3 Note
EXHIBIT A-4          Form of Class A-4 Note
EXHIBIT A-5          Form of Class A-5 Note
EXHIBIT A-6          Form of Class B Note
EXHIBIT A-7          Form of Class C Note
EXHIBIT B            Form of Student Loan Acquisition Certificate
EXHIBIT C            Form of Transferee Letter
EXHIBIT D            Form of Rule 144A Certification
EXHIBIT E            Form of Transfer Certificate for Rule 144A Global Note to Regulation S
                     Global Note during Restricted Period
EXHIBIT F            Form of Transfer Certificate for Rule 144A Global Note to Regulation S
                     Global Note after Restricted Period
EXHIBIT G            Form of Transfer Certificate for Regulation S Global Note to Rule 144A
                     Global Note during Restricted Period
EXHIBIT H            Form of Transfer Certificate for Regulation S Global Note during
                     Restricted Period
EXHIBIT I            Indenture Trustee Back-up Certification

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

INDENTURE dated as of October 1, 2005, between THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, a Delaware statutory trust (the "Issuer"), and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as trustee and not in its individual capacity (the "Indenture Trustee").

## W I T N E S S E T H:

WHEREAS, the Issuer is duly created as a statutory trust under the laws of the State of Delaware and by proper action has duly authorized the execution and delivery of this Indenture, which Indenture provides for the issuance of student loan asset-backed notes to finance the acquisition of certain student loans from The National Collegiate Funding LLC (the "Depositor") and the payment to holders of the Notes; and

WHEREAS, this Indenture is subject to the provisions of the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act" or "TIA"), that are deemed to be incorporated into this Indenture and shall, to the extent applicable, be governed by such provisions;

NOW, THEREFORE, each party agrees as follows for the benefit of the other party and for the equal and ratable benefit of the holders of the Issuer's Class A-1 Notes (the "Class A-1 Notes"), Class A-2 Notes (the "Class A-2 Notes"), Class A-3 Notes (the "Class A-3 Notes"), Class A-4 Notes (the "Class A-4 Notes"), Class A-5-1 Notes (the "Class A-5-1 Notes"), Class A-5-2 Notes (the "Class A-5-2 Notes"), Class A-5-3 Notes (the "Class A-5-3 Notes"), Class A-5-4 Notes (the "Class A-5-4 Notes"), Class A-5-5 Notes (the "Class A-5-5 Notes"), Class A-5-6 Notes (the "Class A-5-6 Notes"), Class A-5-7 Notes (the "Class A-5-7 Notes"), Class A-5-8 Notes (the "Class A-5-8 Notes"), Class A-5-9 Notes (the "Class A-5-9 Notes"), Class A-5-10 Notes (the "Class A-5-10 Notes"), Class A-5-11 Notes (the "Class A-5-11 Notes"), Class A-5-12 Notes (the "Class A-5-12 Notes"), Class A-5-13 Notes (the "Class A-5-13 Notes"), Class A-5-14 Notes (the "Class A-5-14 Notes"), Class A-5-15 Notes (the "Class A-5-15 Notes"), Class A-5-16 Notes (the "Class A-5-16 Notes"), Class A-5-17 Notes (the "Class A-5-17 Notes"), Class A-5-18 Notes (the "Class A-5-18 Notes"), Class A-5-19 Notes (the "Class A-5-19 Notes"), Class A-5-20 Notes (the "Class A-5-20 Notes"), Class A-5-21 Notes (the "Class A-5-21 Notes"), Class A-5-22 Notes (the "Class A-5-22 Notes"), Class A-5-23 Notes (the "Class A-5-23 Notes"), Class A-5-24 Notes (the "Class A-5-24 Notes") and Class A-5-25 Notes (the "Class A-5-25 Notes"), Class B Notes (the "Class B Notes"), Class C Notes (the "Class C Notes" and together with the Class A-1 Notes, the Class A-2 Notes, the Class A-3 Notes, the Class A-4 Notes, the Class A-5-1 Notes, the Class A-5-2 Notes, Class A-5-3 Notes, Class A-5-4 Notes, Class A-5-5 Notes, Class A-5-6 Notes, Class A-5-7 Notes, Class A-5-8 Notes, Class A-5-9 Notes, Class A-5-10 Notes, Class A-5-11 Notes, Class A-5-12 Notes, Class A-5-13 Notes, Class A-5-14 Notes, Class A-5-15 Notes, Class A-5-16 Notes, Class A-5-17 Notes, Class A-5-18 Notes, Class A-5-19 Notes, Class A-5-20 Notes, Class A-5-21 Notes, Class A-5-22 Notes, Class A-5-23 Notes, Class A-5-24 Notes and Class A-5-25 Notes and the Class B Notes, the "Notes"):

## GRANTING CLAUSE

The Issuer hereby Grants to the Indenture Trustee at the Closing Date with respect to the Initial Financed Student Loans, and as of each Subsequent Transfer Date with respect to Subsequent

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:09:15 RM
Ramsey County, MN

Loans acquired as of such date, as trustee for the benefit of the holders of the Notes, all the Issuer's right, title and interest in and to the following:

(a) the Student Loans, and all obligations of the Obligors thereunder including all moneys paid thereunder on or after the Cutoff Date (and, in the case of Subsequent Student Loans, on or after the related Subsequent Cutoff Date);

(b) all Servicing Agreements and all Student Loan Purchase Agreements, including the right of the Issuer to cause the Sellers to repurchase or the Servicer to purchase, Student Loans from the Issuer under circumstances described therein;

(c) each Guarantee Agreement, including the right of the Issuer to cause the Guarantee Agency to make Guarantee Payments in respect of the Student Loans, the TERI Deposit and Security Agreement and the TERI Pledge Fund as the same relate to the Student Loans and the proceeds thereof, and each of the other Basic Documents;

(d) all funds on deposit from time to time in the Trust Accounts related to the Notes (and sub-accounts thereof), including the Reserve Account Initial Deposit and the Pre-Funding Account; and

(e) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectively, "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect of, the Notes, equally and ratably, without prejudice, priority or distinction, except as otherwise provided for herein, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, accepts the trusts under this Indenture in accordance with the provisions of this Indenture and agrees to perform its duties required in this Indenture to the best of its ability to the end that the interests of the holders of the Notes may be adequately and effectively protected.

## ARTICLE I

### Definitions and Usage

SECTION 1.01    Definitions and Usage. Except as otherwise specified herein or as the context may otherwise require, capitalized terms used but not defined herein are defined in Appendix A hereto, which also contain rules as to usage that shall be applicable herein.

2

Filed in Second Judicial District Court
2/18/2006 11:08:15 RM
Ramsey County, MN

## ARTICLE II

### The Notes

SECTION 2.01   Form. The Notes, together with the Indenture Trustee's certificate of authentication, shall be in substantially the forms set forth in Exhibits A-1 through A-7, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by the officers executing the Notes, as evidenced by their execution of the Notes. Any portion of the text of any Note may be set forth on the reverse thereof, with an appropriate reference thereto on the face of the Note.

The Definitive Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods (with or without steel engraved borders), all as determined by the officers executing such Notes, as evidenced by their execution of such Notes.

Each Note shall be dated the date of its authentication. The terms of the Notes set forth in Exhibits A-1 through A-7, are part of the terms of this Indenture.

SECTION 2.02   Execution, Authentication and Delivery. The Notes shall be executed on behalf of the Issuer by any of its Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuer shall bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Indenture Trustee shall upon an Issuer Order authenticate and deliver Notes for original issue in the following Classes and aggregate principal amounts:

| Note Class | Initial Aggregate Principal Amount | Note Class | Initial Aggregate Principal Amount |
|---|---|---|---|
| Class A-1 | $213,375,000 | Class A-5-12 | $227,863,000 |
| Class A-2 | $415,110,000 | Class A-5-13 | $    6,000 |
| Class A-3 | $302,434,000 | Class A-5-14 | $   12,000 |
| Class A-4 | $137,008,000 | Class A-5-15 | $   11,000 |
| Class A-5-1 | $ 10,207,000 | Class A-5-16 | $   10,000 |
| Class A-5-2 | $ 18,988,000 | Class A-5-17 | $   15,000 |
| Class A-5-3 | $ 18,989,000 | Class A-5-18 | $   14,000 |
| Class A-5-4 | $ 16,990,000 | Class A-5-19 | $   14,000 |
| Class A-5-5 | $ 23,985,000 | Class A-5-20 | $   13,000 |
| Class A-5-6 | $ 22,986,000 | Class A-5-21 | $   12,000 |
| Note | Initial | Note | Initial |

3

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:09:15 RM
Ramsey County, MN

| Class | Aggregate Principal Amount | Class | Aggregate Principal Amount |
|-------|---------------------------|-------|---------------------------|
| Class A-5-7 | $23,986,000 | Class A-5-22 | $ 11,000 |
| Class A-5-8 | $ 20,987,000 | Class A-5-23 | $ 10,000 |
| Class A-5-9 | $ 19,988,000 | Class A-5-24 | $ 137,000 |
| Class A-5-10 | $ 18,989,000 | Class B | $ 83,000,000 |
| Class A-5-11 | $ 16,990,000 | Class C | $ 84,500,000 |

Each Note shall be dated the date of its authentication. The Notes shall be issuable as registered Notes in minimum denominations of $100,000 and in integral multiples of $1 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Indenture Trustee by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

SECTION 2.03    Temporary Notes. Pending the preparation of Definitive Notes, the Issuer may execute, and upon receipt of an Issuer Order the Indenture Trustee shall authenticate and deliver, temporary Notes which are printed, lithographed, typewritten, mimeographed or otherwise produced, of the tenor of the Definitive Notes in lieu of which they are issued and with such variations not inconsistent with the terms of this Indenture as the officers executing such Notes may determine, as evidenced by their execution of such Notes.

If temporary Notes are issued, the Issuer will cause Definitive Notes to be prepared without unreasonable delay. After the preparation of Definitive Notes, the temporary Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at the office or agency of the Issuer to be maintained as provided in Section 3.02, without charge to the holder of the Notes. Upon surrender for cancellation of any one or more temporary Notes, the Issuer shall execute and the Indenture Trustee shall authenticate and deliver in exchange therefor a like initial principal amount of Definitive Notes of authorized denominations. Until so exchanged, the temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

SECTION 2.04    Registration; Registration of Transfer and Exchange. (a) The Indenture Trustee shall cause to be kept a register (the "Note Register") in which, subject to such reasonable regulations as it may prescribe, the Issuer shall provide for the registration of Notes and the registration of transfers and exchanges of Notes as herein provided. The Indenture Trustee shall be "Note Registrar" for the purpose of registering Notes and transfers of Notes as herein provided. Upon any resignation of any Note Registrar, the Issuer shall promptly appoint a successor.

(b)    If a Person other than the Indenture Trustee is appointed by the Issuer as Note Registrar, the Issuer will give the Indenture Trustee prompt written notice of the appointment of such Note Registrar and of the location, and any change in the location, of the Note Register, and the Indenture Trustee shall have the right to inspect the Note Register at all

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

reasonable times and to obtain copies thereof, and the Indenture Trustee shall have the right to rely upon a certificate executed on behalf of the Note Registrar by an Executive Officer thereof as to the names and addresses of the holders of the Notes and the principal amounts, and number of such Notes.

(c)     The Issuer initially appoints the Indenture Trustee to act as custodian with respect to the Notes. The Securities Legend shall be placed on each Private Note.

(d)     Every Note presented or surrendered for registration of transfer or exchange shall be duly endorsed by, or be accompanied by a written instrument of transfer in form satisfactory to the Indenture Trustee duly executed by the holder of the Notes thereof or such holder's attorney duly authorized in writing, with such signature guaranteed by an "eligible guarantor institution" meeting the requirements of the Note Registrar, which requirements include membership or participation in Securities Transfer Agent's Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Note Registrar in addition to, or in substitution for, STAMP, all in accordance with the Exchange Act.

(e)     No service charge shall be made to a holder of the Notes for any registration of transfer or exchange of Notes, but the Indenture Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes, other than exchanges pursuant to Section 2.03 or 9.06 not involving any transfer.

(f)     On the Closing Date, the Issuer will execute and the Indenture Trustee will, upon Issuer Order, authenticate one or more Global Notes in an aggregate principal amount that shall equal the applicable Original Principal Balance for each Class of Notes.

The Global Notes, pursuant to the Depository's instructions, shall be delivered by the Administrator on behalf of the Depository to and deposited with the DTC Custodian, and shall be registered in the name of Cede & Co. and shall bear a legend substantially to the following effect:

> "Unless this Note is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to the Issuer or its agent for registration of transfer, exchange or payment, and any Note issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an interest herein."

The Global Notes may be deposited with such other Depository as the Administrator may from time to time designate, and shall bear such legend as may be appropriate; provided that

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

such successor Depository maintains a book-entry system that qualifies to be treated as "registered form" under Section 163(f) of the Code.

The Issuer and the Indenture Trustee are hereby authorized to execute and deliver a Note Depository Agreement with the Depository relating to the Global Notes.

(g)     With respect to Notes registered in the Note Register in the name of Cede & Co., as nominee of the Depository, the Administrator, the Back-Up Administrator, the Owner Trustee and the Indenture Trustee shall have no responsibility or obligation to Participants or Indirect Participants or Beneficial Owners for which the Depository holds Notes from time to time as a Depository. Without limiting the immediately preceding sentence, the Administrator, the Back-Up Administrator, the Owner Trustee and the Indenture Trustee shall have no responsibility or obligation with respect to (a) the accuracy of the records of the Depository, Cede & Co., or any Participant or Indirect Participant or Beneficial Owners with respect to the ownership interest in the Notes, (b) the delivery to any Participant or Indirect Participant or any other Person, other than a registered Noteholder, (c) the payment to any Participant or Indirect Participant or any other Person, other than a registered Noteholder as shown in the Note Register, of any amount with respect to any distribution of principal or interest on the Notes or (d) the making of book-entry transfers among Participants of the Depository with respect to Notes registered in the Note Register in the name of the nominee of the Depository.  No Person other than a registered Noteholder as shown in the Note Register shall receive a Note evidencing such Note.

(h)     Upon delivery by the Depository to the Indenture Trustee of written notice to the effect that the Depository has determined to substitute a new nominee in place of Cede & Co., and subject to the provisions hereof with respect to the payment of distributions by the mailing of checks or drafts to the registered Noteholder appearing as registered owners in the Note Register on a Record Date, the name "Cede & Co." in this Indenture shall refer to such new nominee of the Depository.

(i)     Subject to the preceding paragraphs, upon surrender for registration of transfer of any Note at the office of the Note Registrar and, upon satisfaction of the conditions set forth below, the Issuer shall execute in the name of the designated transferee or transferees, a new Note of the same principal balance and dated the date of authentication by the Indenture Trustee.  The Note Registrar shall notify the Administrator and the Indenture Trustee of any such transfer.

By acceptance of an Individual Note relating to a Private Note, whether upon original issuance or subsequent transfer, each holder of such a Private Note acknowledges the restrictions on the transfer of such Private Note set forth in the Securities Legend and agrees that it will transfer such a Private Note only as provided herein.  The Note Registrar shall register the transfer of any Individual Note relating to a Private Note if prior to the transfer the transferee furnishes to the Note Registrar a Transferee Letter in the form of Exhibit C hereto, provided that, if based upon an Opinion of Counsel to the effect that the delivery of such Transferee Letter is not sufficient to confirm that the proposed transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and other applicable laws, the Note Registrar may as a condition of the registration of any such transfer

6

require the transferor to furnish other certifications, legal opinions or other information prior to registering the transfer of an Individual Note relating to a Private Note.

(j)   Subject to Section 2.04(n), so long as a Global Note relating to a Private Note remains outstanding and is held by or on behalf of the Depository, transfers of beneficial interests in the Global Note relating to a Private Note, or transfers by holders of Individual Notes relating to a Private Note to transferees that take delivery in the form of beneficial interests in the Global Note relating to a Private Note, may be made only in accordance with this Section 2.04(j) and in accordance with the rules of the Depository.

> (i)   Rule 144A Global Note to Regulation S Global Note During the Restricted Period.  If, during the Restricted Period, a Beneficial Owner of an interest in a Rule 144A Global Note wishes at any time to transfer its beneficial interest in such Rule 144A Global Note to a Person who wishes to take delivery thereof in the form of a beneficial interest in a Regulation S Global Note, such Beneficial Owner may, in addition to complying with all applicable rules and procedures of the Depository and Clearstream or Euroclear applicable to transfers by their respective participants (the "Applicable Procedures"), transfer or cause the transfer of such beneficial interest for an equivalent beneficial interest in the Regulation S Global Note only upon compliance with the provisions of this Section 2.04(j)(i).  Upon receipt by the Note Registrar at its Corporate Trust Office of (1) written instructions given in accordance with the Applicable Procedures from a Depository Participant directing the Note Registrar to credit or cause to be credited to another specified Depository Participant's account a beneficial interest in the Regulation S Global Note in an amount equal to the denomination of the beneficial interest in the Rule 144A Global Note to be transferred, (2) a written order given in accordance with the Applicable Procedures containing information regarding the account of the Depository Participant (and the Euroclear or Clearstream account, as the case may be) to be credited with, and the account of the Depository Participant to be debited for, such beneficial interest, and (3) a certificate in the form of Exhibit E hereto given by the Beneficial Owner that is transferring such interest, the Note Registrar shall instruct the Depository to reduce the denomination of the Rule 144A Global Note by the denomination of the beneficial interest in the Rule 144A Global Note to be so transferred and, concurrently with such reduction, to increase the denomination of the Regulation S Global Note by the denomination of the beneficial interest in the Rule 144A Global Note to be so transferred, and to credit or cause to be credited to the account of the Person specified in such instructions (who shall be a Depository Participant acting for or on behalf of Euroclear or Clearstream, or both, as the case may be) a beneficial interest in the Regulation S Global Note having a denomination equal to the amount by which the denomination of the Rule 144A Global Note was reduced upon such transfer.

> (ii)   Rule 144A Global Note to Regulation S Global Note After the Restricted Period.  If, after the Restricted Period, a Beneficial Owner of an interest in a Rule 144A Global Note wishes at any time to transfer its beneficial interest in such Rule 144A Global Note to a Person who wishes to take delivery thereof in

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

the form of a beneficial interest in a Regulation S Global Note, such holder may, in addition to complying with all Applicable Procedures, transfer or cause the transfer of such beneficial interest for an equivalent beneficial interest in a Regulation S Global Note only upon compliance with the provisions of this Section 2.04(j)(ii). Upon receipt by the Note Registrar at its Corporate Trust Office of (1) written instructions given in accordance with the Applicable Procedures from a Depository Participant directing the Note Registrar to credit or cause to be credited to another specified Depository Participant's account a beneficial interest in the Regulation S Global Note in an amount equal to the denomination of the beneficial interest in the Rule 144A Global Note to be transferred, (2) a written order given in accordance with the Applicable Procedures containing information regarding the account of the Depository Participant (and, in the case of a transfer pursuant to and in accordance with Regulation S, the Euroclear or Clearstream account, as the case may be) to be credited with, and the account of the Depository Participant to be debited for, such beneficial interest, and (3) a certificate in the form of Exhibit F hereto given by the Beneficial Owner that is transferring such interest, the Note Registrar shall instruct the Depository to reduce the denomination of the Rule 144A Global Note by the aggregate denomination of the beneficial interest in the Rule 144A Global Note to be so transferred and, concurrently with such reduction, to increase the denomination of the Regulation S Global Note by the aggregate denomination of the beneficial interest in the Rule 144A Global Note to be so transferred, and to credit or cause to be credited to the account of the Person specified in such instructions (who shall be a Depository Participant acting for or on behalf of Euroclear or Clearstream, or both, as the case may be) a beneficial interest in the Regulation S Global Note having a denomination equal to the amount by which the denomination of the Rule 144A Global Note was reduced upon such transfer.

(iii)     Regulation S Global Note to Rule 144A Global Note. If the Beneficial Owner of an interest in a Regulation S Global Note wishes at any time to transfer its beneficial interest in such Regulation S Global Note to a Person who wishes to take delivery thereof in the form of a beneficial interest in the Rule 144A Global Note, such holder may, in addition to complying with all Applicable Procedures, transfer or cause the transfer of such beneficial interest for an equivalent beneficial interest in the Rule 144A Global Note only upon compliance with the provisions of this Section 2.04(j)(iii). Upon receipt by the Note Registrar at its Corporate Trust Office of (1) written instructions given in accordance with the Applicable Procedures from a Depository Participant directing the Note Registrar to credit or cause to be credited to another specified Depository Participant's account a beneficial interest in the Rule 144A Global Note in an amount equal to the denomination of the beneficial interest in the Regulation S Global Note to be transferred, (2) a written order given in accordance with the Applicable Procedures containing information regarding the account of the Depository Participant to be credited with, and the account of the Depository Participant (or, if such account is held for Euroclear or Clearstream, the Euroclear or Clearstream account, as the case may be) to be debited for such beneficial interest, and (3) with respect to a transfer of a beneficial interest in the Regulation S Global

Note for a beneficial interest in the related Rule 144A Global Note (i) during the Restricted Period, a certificate in the form of Exhibit G hereto given by the Beneficial Owner, or (ii) after the Restricted Period, a Rule 144A Certification in the form of Exhibit D hereto from the transferee to the effect that such transferee is a Qualified Institutional Buyer, the Note Registrar shall instruct the Depository to reduce the denomination of the Regulation S Global Note by the denomination of the beneficial interest in the Regulation S Global Note to be transferred, and, concurrently with such reduction, to increase the denomination of the Rule 144A Global Note by the aggregate denomination of the beneficial interest in the Regulation S Global Note to be so transferred, and to credit or cause to be credited to the account of the Person specified in such instructions (who shall be a Depository Participant acting for or on behalf of Euroclear or Clearstream, or both, as the case may be) a beneficial interest in the Rule 144A Global Note having a denomination equal to the amount by which the denomination of the Regulation S Global Note was reduced upon such transfer.

(iv)   Transfers Within Regulation S Global Notes During Restricted Period.   If, during the Restricted Period, the Beneficial Owner of an interest in a Regulation S Global Note wishes at any time to transfer its beneficial interest in such Regulation S Global Note to a Person who wishes to take delivery thereof in the form of a Regulation S Global Note, such Beneficial Owner may transfer or cause the transfer of such beneficial interest for an equivalent beneficial interest in such Regulation S Global Note only upon compliance with the provisions of this Section 2.04(j)(iv) and all Applicable Procedures. Upon receipt by the Note Registrar at its Corporate Trust Office of (1) written instructions given in accordance with the Applicable Procedures from a Depository Participant directing the Note Registrar to credit or cause to be credited to another specified Depository Participant's account a beneficial interest in such Regulation S Global Note in an amount equal to the denomination of the beneficial interest to be transferred, (2) a written order given in accordance with the Applicable Procedures containing information regarding the account of the Depository Participant to be credited with, and the account of the Depository Participant (or, if such account is held for Euroclear or Clearstream, the Euroclear or Clearstream account, as the case may be) to be debited for, such beneficial interest and (3) a certificate in the form of Exhibit H hereto given by the transferee, the Note Registrar shall instruct the Depository to credit or cause to be credited to the account of the Person specified in such instructions (who shall be a Depository Participant acting for or on behalf of Euroclear or Clearstream, or both, as the case may be) a beneficial interest in the Regulation S Global Note having a denomination equal to the amount specified in such instructions by which the account to be debited was reduced upon such transfer. The Note Registrar shall not be required to monitor compliance by Beneficial Owners of the provisions of this Section 2.04(j)(iv).

(k)   Any and all transfers from a Global Note relating to a Private Note to a transferee wishing to take delivery in the form of an Individual Note relating to a Private Note will require the transferee to take delivery subject to the restrictions on the transfer of such

9

Filed in Second Judicial District Court
2/8/2006 11:09:15 RM
Ramsey County, MN

Individual Note relating to a Private Note described on the face of such Note, and such transferee agrees that it will transfer such Individual Note relating to a Private Note only as provided therein and herein. No such transfer shall be made and the Note Registrar shall not register any such transfer unless such transfer is made in accordance with this Section 2.04(k).

   (i) Transfers of a beneficial interest in a Global Note relating to a Private Note to a Qualified Institutional Buyer or a Regulation S Investor wishing to take delivery in the form of an Individual Note relating to a Private Note will be registered by the Note Registrar only upon compliance with the provisions of Section 2.04(j) and if the Note Registrar is provided with a Rule 144A Certification or a Regulation S Transfer Certificate, as applicable.

   (ii) Notwithstanding the foregoing, no transfer of a beneficial interest in a Regulation S Global Note to an Individual Note relating to a Private Note shall be made prior to the expiration of the Restricted Period. Upon acceptance for exchange or transfer of a beneficial interest in a Global Note for an Individual Note relating to a Private Note, as provided herein, the Note Registrar shall endorse on the schedule affixed to the related Global Note (or on a continuation of such schedule affixed to such Global Note and made a part thereof) an appropriate notation evidencing the date of such exchange or transfer and a decrease in the denomination of such Global Note equal to the denomination of such Individual Note relating to a Private Note issued in exchange therefor or upon transfer thereof. Unless determined otherwise by the Administrator in accordance with applicable law, an Individual Note relating to a Private Note issued upon transfer of or exchange for a beneficial interest in the Global Note shall bear the Securities Legend.

   (l) <u>Transfers of Individual Note to the Global Notes</u>. If a Noteholder of an Individual Note relating to a Private Note wishes at any time to transfer such Note to a Person who wishes to take delivery thereof in the form of a beneficial interest in the related Regulation S Global Note or the related Rule 144A Global Note, such transfer may be effected only in accordance with the Applicable Procedures, and this Section 2.04(l). Upon receipt by the Note Registrar at the Corporate Trust Office of (1) the Individual Note relating to a Private Note to be transferred with an assignment and transfer, (2) written instructions given in accordance with the Applicable Procedures from a Depository Participant directing the Note Registrar to credit or cause to be credited to another specified Depository Participant's account a beneficial interest in such Regulation S Global Note or such Rule 144A Global Note, as the case may be, in an amount equal to the denomination of the Individual Note to be so transferred, (3) a written order given in accordance with the Applicable Procedures containing information regarding the account of the Depository Participant (and, in the case of any transfer pursuant to Regulation S, the Euroclear or Clearstream account, as the case may be) to be credited with such beneficial interest, and (4) (x) if delivery is to be taken in the form of a beneficial interest in the Regulation S Global Note, a Regulation S Transfer Certificate from the transferor or (y) a Rule 144A Certification from the transferee to the effect that such transferee is a Qualified Institutional Buyer, if delivery is to be taken in the form of a beneficial interest in the Rule 144A Global Note, the Note Registrar shall cancel such Individual Note relating to a Private Note, the Issuer shall execute and the Indenture Trustee shall authenticate and deliver a new Individual Note relating to a Private Note for the denomination of the Individual Note not so transferred,

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

registered in the name of the Noteholder, and the Note Registrar shall instruct the Depository to increase the denomination of the Regulation S Global Note or the Rule 144A Global Note, as the case may be, by the denomination of the Individual Note to be so transferred, and to credit or cause to be credited to the account of the Person specified in such instructions (who, in the case of any increase in the Regulation S Global Note during the Restricted Period, shall be a Depository Participant acting for or on behalf of Euroclear or Clearstream, or both, as the case may be) a corresponding denomination of the Rule 144A Global Note or the Regulation S Global Note, as the case may be.

It is the intent of the foregoing that under no circumstances may an investor that is not a Qualified Institutional Buyer or a Regulation S Investor take delivery in the form of a beneficial interest in a Global Note relating to a Private Note or an Individual Note relating to a Private Note.

(m)    An exchange of a beneficial interest in a Global Note for an Individual Note or Notes, an exchange of an Individual Note or Notes for a beneficial interest in a Global Note and an exchange of an Individual Note or Notes for another Individual Note or Notes (in each case, whether or not such exchange is made in anticipation of subsequent transfer, and in the case of the Global Notes, so long as the Global Notes remain outstanding and are held by or on behalf of the Depository), may be made only in accordance with this Section 2.04 and in accordance with the rules of the Depository and Applicable Procedures.

(n)    (i) Upon acceptance for exchange or transfer of an Individual Note relating to a Private Note for a beneficial interest in the Global Note as provided herein, the Note Registrar shall cancel such Individual Note and shall (or shall request the Depository to) endorse on the schedule affixed to the applicable Global Note (or on a continuation of such schedule affixed to the Global Note and made a part thereof) an appropriate notation evidencing the date of such exchange or transfer and an increase in the Note balance of the Global Note equal to the Note balance of such Individual Note exchanged or transferred therefor.

(ii)    Upon acceptance for exchange or transfer of a beneficial interest in the Global Note for an Individual Note relating to a Private Note as provided herein, the Note Registrar shall (or shall request the Depository to) endorse on the schedule affixed to the Global Note (or on a continuation of such schedule affixed to the Global Note and made a part thereof) an appropriate notation evidencing the date of such exchange or transfer and a decrease in the Note balance of the Global Note equal to the Note balance of such Individual Note issued in exchange therefor or upon transfer thereof.

(o)    The Securities Legend shall be placed on any Individual Note relating to a Private Note issued in exchange for or upon transfer of another Individual Note relating to a Private Note or of a beneficial interest in the Global Note.

No transfer of any Private Note shall be made unless such transfer is exempt from the registration requirements of the Securities Act and any applicable state securities laws or is made in accordance with said Act and laws. No transfer of any Private Note shall be made if such transfer would require the Issuer to register as an "investment company" under the Investment Company Act of 1940, as amended. In the event of any such transfer, unless such transfer is

11

made in reliance on Rule 144A under the Securities Act or Regulation S under the Securities Act, (i) the Indenture Trustee may require a written Opinion of Counsel (which may be in-house counsel) acceptable to and in form and substance reasonably satisfactory to the Indenture Trustee that such transfer may be made pursuant to an exemption, describing the applicable exemption and the basis therefor, from said Act and laws or is being made pursuant to said Act and laws, which Opinion of Counsel shall not be an expense of the Indenture Trustee or the Trust and (ii) the Indenture Trustee shall require the transferee to execute a Transferee Letter certifying to the Issuer and the Indenture Trustee the facts surrounding such transfer, which Transferee Letter shall not be an expense of the Indenture Trustee, or the Trust. The holder of a Private Note desiring to effect such transfer shall, and does hereby agree to, indemnify the Indenture Trustee, and the Trust against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws. None of the Issuer, the Indenture Trustee or the Trust intends or is obligated to register or qualify any Private Note under the Securities Act or any state securities laws.

No Note may be acquired directly or indirectly by a fiduciary of, on behalf of, or with "Plan Assets" (within the meaning of Section 2510.3-101 of the U.S. Department of Labor regulations (the "Plan Asset Regulation")) of, an "employee benefit plan" as defined in Section 3(3) of ERISA, a "plan" within the meaning of Section 4975 of the Code or any other entity whose underlying assets include Plan Assets by reason of any plan's investment in the entity, which is subject to Title I of ERISA or Section 4975 of the Code (a "Plan"), unless (i) such Note (other than a Class A-5 Note) is rated investment grade or better as of the date of purchase, (ii) the transferee of the Note believes that the Note is properly treated as indebtedness without substantial equity features for purposes of the Plan Asset Regulation and agrees to so treat such Note and (iii) the acquisition and holding of the Note do not result in a violation of the prohibited transaction rules of ERISA or Section 4975 of the Code (A) because it is covered by an applicable exemption, including Prohibited Transaction Class Exemption 96-23, 95-60, 91-38, 90-1 or 84-14, or (B) by reason of the Trust, the Administrator, the Back-up Administrator, the Underwriters, the Servicer, the Indenture Trustee, the Owner Trustee, the Grantor Trustee, any provider of credit support or any of their affiliates not being a "Party in Interest" (within the meaning of Section 3(14) of ERISA) with respect to such Plan. Any transferee of a Note shall be deemed to have represented that such transferee is acquiring a Note in conformance with the requirements of the preceding sentence.

The Indenture Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Note (including any transfers between or among Participants, members or Beneficial Owners in any Note) other than to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by, the terms of this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

SECTION 2.05   Mutilated, Destroyed, Lost or Stolen Notes. If (i) any mutilated Note is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Indenture Trustee such security or indemnity as may be required by it to hold the Issuer and the Indenture Trustee harmless, then, in the absence of notice to the Issuer, the Note

12

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2016 11:09:15 AM
Ramsey County, MN

Registrar or the Indenture Trustee that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8-405 of the UCC are met, the Issuer shall execute and upon its request the Indenture Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; *provided, however*, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within 15 days shall be due and payable instead of issuing a replacement Note, the Issuer may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof. If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuer and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section, the Issuer may require the payment by the holder of the Notes thereof of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every replacement Note issued pursuant to this Section in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuer, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

SECTION 2.06   Persons Deemed Owner. Prior to due presentment for registration of transfer of any Note, the Issuer, the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and neither the Issuer or the Indenture Trustee nor any agent of the Issuer or the Indenture Trustee shall be affected by notice to the contrary.

SECTION 2.07   Payment of Principal and Interest; Defaulted Interest. (a) Each Class of Notes shall accrue interest as provided in the applicable form of such Class set forth in Exhibits A-1 through A-7 respectively, and such interest accrued on each Class of Notes shall be payable on each applicable Distribution Date as specified therein, subject to Section 3.01. Any installment of interest or principal, if any, with respect to each Class of Notes payable on any applicable Note which is punctually paid or duly provided for by the Issuer on the applicable Distribution Date shall be paid to the Person in whose name such Note (or one or more

13

Predecessor Notes) is registered on the Record Date by check mailed first-class, postage prepaid to such Person's address as it appears on the Note Register on such Record Date, except that, unless Definitive Notes have been issued pursuant to Section 2.12, with respect to Notes registered on the Record Date in the name of the nominee of the Clearing Agency (initially, such nominee to be Cede & Co.), payment will be made by wire transfer in immediately available funds to the account designated by such nominee and except for the final installment of principal payable with respect to such Note on a Distribution Date or on the applicable Note Final Maturity Date which shall be payable as provided below. The funds represented by any such checks returned undelivered shall be held in accordance with Section 3.03.

(b) The principal of each Note shall be payable in installments on each Distribution Date as provided in the applicable form of Note set forth in Exhibits A-1 through A-7, respectively, to the extent the amount of funds required and available to be distributed in respect of principal on such Class of Notes pursuant to the terms of this Indenture; *provided, however*, the entire unpaid principal amount of each Class of Notes shall be due and payable on its respective Final Maturity Date. Notwithstanding the foregoing, the entire unpaid principal amount of the Notes shall be due and payable, if not previously paid, on the date on which an Event of Default shall have occurred and is continuing, if the Indenture Trustee or the Interested Noteholders holding a majority of the Outstanding Amount of the related Classes of Notes have declared the Notes to be immediately due and payable in the manner provided in Section 5.02. All principal payments on each Class of Class A Notes shall be made pro rata to the holders of such Class of Notes entitled thereto. The Indenture Trustee shall notify the Person in whose name a Note is registered at the close of business on the Record Date preceding the Distribution Date on which the Issuer expects that the final installment of principal of and interest on any Class of Notes will be paid. Such notice shall be mailed or transmitted by facsimile prior to such final Distribution Date and shall specify that such final installment will be payable only upon presentation and surrender of such Note and shall specify the place where such Note may be presented and surrendered for payment of such installment.

(c) If the Issuer defaults in a payment of interest on any Class of the Notes, the Issuer shall pay defaulted interest (plus interest on such defaulted interest to the extent lawful) at the applicable Note Interest Rate in any lawful manner. The Issuer shall pay such defaulted interest to the persons who are holders of such Class or Classes of Notes on a subsequent special record date, which date shall be at least three Business Days prior to the payment date. The Issuer shall fix or cause to be fixed any such special record date and payment date, and, at least 15 days before any such special record date, the Issuer shall mail to each holder of the affected Class or Classes of Notes and the Indenture Trustee a notice that states the special record date, the payment date and the amount of defaulted interest to be paid.

SECTION 2.08  Cancellation. All Notes surrendered for payment, registration of transfer or exchange shall, if surrendered to any Person other than the Indenture Trustee, be delivered to the Indenture Trustee and shall be promptly cancelled by the Indenture Trustee. The Issuer may at any time deliver to the Indenture Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Indenture Trustee. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Notes may be held or

14

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

disposed of by the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at the time, unless the Issuer shall direct by an Issuer Order that they be returned to it and so long as such Issuer Order is timely and the Notes have not been previously disposed of by the Indenture Trustee.

SECTION 2.09   Release of Collateral.   Subject to Section 11.01 and the terms of the Basic Documents, the Indenture Trustee shall release property from the lien of this Indenture only upon receipt of an Issuer Request accompanied by an Officers' Certificate of the Issuer.

SECTION 2.10   Book-Entry Notes.   The Notes, upon original issuance, will be issued in the form of typewritten Notes representing the Book-Entry Notes, to be delivered to The Depository Trust Company, the initial Clearing Agency, by, or on behalf of, the Issuer. Such Notes shall initially be registered on the Note Register in the name of Cede & Co., the nominee of the initial Clearing Agency, and no Note Owner will receive a Definitive Note (as defined below) representing such Note Owner's interest in such Note, except as provided in Section 2.12. Unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to Note Owners pursuant to Section 2.12:

(i)   the provisions of this Section shall be in full force and effect;

(ii)   the Note Registrar and the Indenture Trustee may deal with the Clearing Agency for all purposes (including the payment of principal of and interest and other amounts on the Notes) as the authorized representative of the Note Owners;

(iii)   to the extent that the provisions of this Section conflict with any other provisions of this Indenture, the provisions of this Section shall control;

(iv)   the rights of Note Owners shall be exercised only through the Clearing Agency and shall be limited to those established by law and agreements between such Note Owners and the Clearing Agency and/or the Clearing Agency Participants pursuant to the Note Depository Agreements. Unless and until Definitive Notes are issued pursuant to Section 2.12, the initial Clearing Agency will make book-entry transfers among the Clearing Agency Participants and receive and transmit payments of principal of and interest and other amounts on the Notes to such Clearing Agency Participants; and

(v)   whenever this Indenture requires or permits actions to be taken based upon instructions or directions of the holders of the Notes evidencing a specified percentage of the Outstanding Amount of the Notes, the Clearing Agency shall be deemed to represent such percentage only to the extent that it has received instructions to such effect from Note Owners and/or Clearing Agency Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Indenture Trustee.

SECTION 2.11   Notices to Clearing Agency.   Whenever a notice or other communication to the holders of the Notes is required under this Indenture, unless and until Definitive Notes shall have been issued to Note Owners pursuant to Section 2.12, the Indenture

Filed in Second Judicial District Court
2/13/2006 11:09:15 AM
Ramsey County, MN

Trustee shall give all such notices and communications specified herein to be given to the holders of the Notes to the Clearing Agency.

SECTION 2.12   Definitive Notes. If (i) the Administrator advises the Indenture Trustee in writing that the Clearing Agency is no longer willing or able to properly discharge its responsibilities with respect to the Notes, and the Administrator is unable to locate a qualified successor, (ii) circumstances change so that the book-entry system through the Clearing Agency is less advantageous due to economic or administrative burden or the use of the book-entry system becomes unlawful with respect to the Notes or the Issuer notifies the Indenture Trustee in writing that because of the change in circumstances the Issuer is terminating the book-entry system with respect to the Notes or (iii) after the occurrence of an Event of Default, Note Owners representing beneficial interests aggregating at least a majority of the Outstanding Amount of such Class of Notes advise the Clearing Agency (which shall then notify the Indenture Trustee) in writing that the continuation of a book-entry system through the Clearing Agency is no longer in the best interests of the Note Owners of such Class of Notes, then the Indenture Trustee will cause the Clearing Agency to notify all Note Owners of such Class of Notes, through the Clearing Agency, of the occurrence of any such event and of the availability of Definitive Notes to such Note Owners requesting the same. Upon surrender to the Indenture Trustee of the typewritten Notes representing the Book-Entry Notes by the Clearing Agency, accompanied by registration instructions, the Issuer shall execute and the Indenture Trustee shall authenticate the Definitive Notes in accordance with the instructions of the Clearing Agency. None of the Issuer, the Note Registrar or the Indenture Trustee shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions. Upon the issuance of Definitive Notes, the Indenture Trustee shall recognize the holders of the Definitive Notes as the Noteholders for such Class of Notes.

SECTION 2.13   Tax Treatment. The Issuer has entered into this Indenture, and the Notes will be issued, with the intention that, for federal, state and local income, business and franchise tax purposes, the Notes will qualify as indebtedness of the Issuer. The Issuer, by entering into this Indenture, and each Noteholder, by its acceptance of its Note, agree to treat the Notes for federal, state and local income, business and franchise tax purposes as indebtedness of the Issuer.

## ARTICLE III

### Covenants

SECTION 3.01   Payment to Noteholders. The Issuer will duly and punctually pay the principal of and interest owing on each Class of Notes pursuant to the terms of this Indenture. Without limiting the foregoing, subject to Section 8.02, the Issuer will cause to be distributed to the holders of the each Class of Notes that portion of the amounts on deposit in the Trust Accounts on a Distribution Date, to which the holders of each Class of Notes are entitled to receive pursuant to the terms of this Indenture. Amounts properly withheld under the Code by any Person from a payment to any holder of the Notes of interest on and/or principal of shall be considered as having been paid by the Issuer to such holder of the applicable Notes for all purposes of this Indenture. The Notes will be non-recourse obligations of the Issuer and shall be

16

Filed in Second Judicial District Court
2/13/2006 1:09:15 PM
Ramsey County, MN

limited in right of payment to amounts available from the Indenture Trust Estate as provided in this Indenture and the Issuer shall not be otherwise liable on the Notes.

SECTION 3.02    Maintenance of Office or Agency. The Issuer will maintain in the Borough of Manhattan, The City of New York, an office or agency where Notes may be surrendered for registration of transfer or exchange. The Issuer hereby initially designates U.S. Bank National Association, U.S. Bank Trust New York, 100 Wall Street, Suite 1600, New York, New York 10005 to serve as its agent for the foregoing purposes. The Issuer will give prompt written notice to the Indenture Trustee of the location, and of any change in the location, of any such office or agency. If at any time the Issuer shall fail to maintain any such office or agency or shall fail to furnish the Indenture Trustee with the address thereof, such surrenders may be made or served at the Corporate Trust Office, and the Issuer hereby appoints the Indenture Trustee as its agent to receive all such surrenders in respect of the Notes.

SECTION 3.03    Money for Payments To Be Held in Trust. As provided in Section 8.02, all payments of amounts due and payable with respect to any Notes that are to be made from amounts distributed from the Collection Account or any other Trust Account pursuant to Section 8.02 shall be made on behalf of the Issuer by the Indenture Trustee or by another Paying Agent, and no amounts so distributed from the Collection Account for payments of Notes shall be paid over to the Issuer except as provided in this Section. The Indenture Trustee is hereby appointed as the initial "Paying Agent" hereunder and the Indenture Trustee hereby accepts such appointment.

On or before the Business Day next preceding each Distribution Date, the Issuer shall distribute or cause to be distributed to the Indenture Trustee (or any other Paying Agent) an aggregate sum sufficient to pay the amounts then becoming due under each Class of the Notes, such sum to be held in trust for the benefit of the Persons entitled thereto and (unless the Paying Agent is the Indenture Trustee) shall promptly notify the Indenture Trustee of its action or failure so to act.

The Issuer will cause each Paying Agent other than the Indenture Trustee to execute and deliver to the Indenture Trustee an instrument in which such Paying Agent shall agree with the Indenture Trustee (and if the Indenture Trustee acts as Paying Agent, it hereby so agrees), subject to the provisions of this Section, that such Paying Agent will:

(i)    hold all sums held by it for the payment of amounts due with respect to each Class of the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(ii)    give the Indenture Trustee notice of any default by the Issuer of which it has actual knowledge (or any other obligor upon the Notes) in the making of any payment required to be made with respect to any Class of Notes;

(iii)    at any time during the continuance of any such default, upon the written request of the Indenture Trustee, forthwith pay to the Indenture Trustee all sums so held in trust by such Paying Agent;

17

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

(iv)    immediately resign as a Paying Agent and forthwith pay to the Indenture Trustee all sums held by it in trust for the payment of each applicable Class of Notes if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment; and

(v)    comply with all requirements of the Code with respect to the withholding from any payments made by it on any Class of the Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith.

The Administrator may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, by written order direct any Paying Agent to pay to the Indenture Trustee all sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to the Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Indenture Trustee or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for two years after such amount has become due and payable shall be discharged from such trust and be paid to the Issuer on Issuer Request; and the holder of such Notes thereof shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon cease; *provided, however*, that the Indenture Trustee or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuer cause to be published once, in a newspaper published in the English language, customarily published on each Business Day and of general circulation in The City of New York, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer.

SECTION 3.04    Existence.  The Issuer will keep in full effect its existence, rights and franchises as a trust under the laws of the State of Delaware (unless it becomes, or any successor Issuer hereunder is or becomes, organized under the laws of any other State or of the United States of America, in which case the Issuer will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes, the Collateral and each other instrument or agreement included in the Indenture Trust Estate.

SECTION 3.05    Protection of Indenture Trust Estate.  The Issuer will from time to time execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

     (i)    maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

     (ii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

     (iii)    enforce any of the Collateral; or

     (iv)    preserve and defend title to the Indenture Trust Estate and the rights of the Indenture Trustee, and the holders of the Notes in such Indenture Trust Estate against the claims of all persons and parties.

The Issuer hereby designates the Indenture Trustee its agent and attorney-in-fact to execute any financing statement, continuation statement or other instrument required to be executed pursuant to this Section.

     SECTION 3.06    Opinions as to Indenture Trust Estate.  (a)  On the Closing Date, the Issuer shall furnish to the Indenture Trustee an Opinion of Counsel either stating that, in the opinion of such counsel, such action has been taken with respect to the recording and filing of this Indenture, any indentures supplemental hereto, and any other requisite documents, and with respect to the execution and filing of any financing statements and continuation statements, as are necessary to perfect and make effective the lien and security interest of this Indenture and reciting the details of such action, or stating that, in the opinion of such counsel, no such action is necessary to make such lien and security interest effective.

     (b)    On or before April 30 in each calendar year, beginning in 2006, the Issuer shall furnish to the Indenture Trustee an Opinion of Counsel either stating that, in the opinion of such counsel, such action has been taken with respect to the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and with respect to the execution and filing of any financing statements and continuation statements as is necessary to maintain the lien and security interest created by this Indenture and reciting the details of such action or stating that in the opinion of such counsel no such action is necessary to maintain such lien and security interest. Such Opinion of Counsel shall also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opinion of such counsel, be required to maintain the lien and security interest of this Indenture until April 30 in the following calendar year.

     SECTION 3.07    Performance of Obligations; Servicing of Financed Student Loans.  (a)  The Issuer will not take any action and will use its best efforts not to permit any action to be taken by others that would release any Person from any of such Person's material covenants or obligations under any instrument or agreement included in the Indenture Trust Estate or that would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any such instrument or agreement, except as expressly provided in this Indenture or the other Basic Documents.

19

62-TR-CV-16-5

Filed in Second Judicial District Court
2/8/2016 1:08:15 PM
Ramsey County, MN

(b)    Although the Issuer will contract with other Persons to assist it in performing its duties under this Indenture, any performance of such duties by a Person identified to the Indenture Trustee in an Officers' Certificate of the Issuer shall be deemed to be action taken by the Issuer. Initially, the Issuer has contracted with the Servicer and the Administrator to assist the Issuer in performing its duties under this Indenture.

(c)    The Issuer will enforce all of its rights under this Indenture and the Basic Documents, including, without limitation, enforcing the covenants and agreements of the Depositor in the Deposit and Sale Agreement (including covenants to the effect that the Depositor will enforce covenants against the Sellers under the Student Loan Purchase Agreements), and will punctually perform and observe all of its obligations and agreements contained in this Indenture, the other Basic Documents and in the instruments and agreements included in the Indenture Trust Estate, including filing or causing to be filed all UCC financing statements and continuation statements required to be filed by the terms of this Indenture in accordance with and within the time periods provided for herein and therein. Except as otherwise expressly provided therein, the Issuer shall not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the consent of the Indenture Trustee and the Interested Noteholders holding a majority of the Outstanding Amount of the related Classes of Notes).

(d)    If the Issuer shall have knowledge of the occurrence of a Servicer Default, an Administrator Default or a Back-up Administrator Default, the Issuer shall promptly notify the Indenture Trustee and the Rating Agencies thereof, and shall specify in such notice the action, if any, the Issuer is taking with respect to such default. If a Servicer Default shall arise from the failure of the Servicer to perform any of its duties or obligations under the Servicing Agreement, or an Administrator Default shall arise from the failure of the Administrator to perform any of its duties or obligations under the Administration Agreement, or a Back-up Administrator Default shall arise from the failure of the Back-up Administrator to perform any of its duties or obligations under the Back-up Administration Agreement, as the case may be, with respect to the Financed Student Loans, the Issuer shall take all reasonable steps available to it to enforce its rights under the Basic Documents in respect of such failure.

(e)    Upon any partial or complete termination of the Servicer's rights and powers pursuant to the Servicing Agreement, or any termination of the Administrator's rights and powers pursuant to the Administration Agreement, or any termination of the Back-up Administrator's rights and powers pursuant to the Back-up Administration Agreement, as the case may be, the Issuer shall promptly notify the Indenture Trustee and the Rating Agencies. As soon as a successor Servicer, a successor Administrator, or a successor Back-up Administrator is appointed, the Issuer shall notify the Indenture Trustee and the Rating Agencies of such appointment, specifying in such notice the name and address of such Successor Servicer, such Successor Administrator or such Back-up Administrator.

(f)    Without derogating from the absolute nature of the assignment granted to the Indenture Trustee under this Indenture or the rights of the Indenture Trustee hereunder, the Issuer agrees that it will not, without the prior written consent of the Indenture Trustee and the Interested Noteholders holding a majority of the Outstanding Amount of the Related Classes of Notes, amend, modify, waive, supplement, terminate or surrender, or agree to any amendment,

20

modification, supplement, termination, waiver or surrender of, the terms of any Collateral or the Basic Documents, except to the extent otherwise provided therein, or waive timely performance or observance by the Servicer, the Administrator, the Back-up Administrator, the Depositor, the Issuer or the Owner Trustee under the Basic Documents; *provided, however*, that no such amendment shall (i) increase or reduce in any manner the amount of, or accelerate or delay the timing of, collections of payments with respect to Student Loans or distributions that shall be required to be made for the benefit of the holders of Notes, (ii) amend the aforesaid percentage of the Outstanding Amount of the related Class or Classes of Notes, which are required to consent to any such amendment, without the consent of all outstanding holders of all Classes of Notes affected by such amendment. If any such amendment, modification, supplement or waiver shall be so consented to by the Indenture Trustee and such holders of the Notes, the Issuer agrees, promptly following a request by the Indenture Trustee to do so, to execute and deliver, in its own name and at its own expense, such agreements, instruments, consents and other documents as the Indenture Trustee may deem necessary or appropriate in the circumstances.

SECTION 3.08    Negative Covenants. So long as any Notes are Outstanding, the Issuer shall not:

(i)    except as expressly permitted by this Indenture or any other Basic Document, sell, transfer, exchange or otherwise dispose of any of the properties or assets of the Issuer, including those included in the Indenture Trust Estate, unless directed to do so by the Indenture Trustee pursuant to the terms hereof;

(ii)    claim any credit on, or make any deduction from the principal or interest payable in respect of, the applicable Notes (other than amounts properly withheld from such payments under the Code or applicable state law) or assert any claim against any present or former holder of the Notes by reason of the payment of the taxes levied or assessed upon any part of the Indenture Trust Estate; or

(iii)    (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (B) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Indenture Trust Estate or any part thereof or any interest therein or the proceeds thereof (other than tax liens and other liens that arise by operation of law, in each case arising solely as a result of an action or omission of the related Obligor, and other than as expressly permitted by the Basic Documents) or (C) permit the lien of this Indenture not to constitute a valid first priority (other than with respect to any such tax or other lien) security interest in the Indenture Trust Estate.

21

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

SECTION 3.09    Annual Statement as to Compliance. The Issuer will deliver to the Indenture Trustee, on or before March 15 of each year, commencing March 15, 2006, an Officers' Certificate of the Issuer stating that:

(i)    a review of the activities of the Issuer during the previous calendar year and of performance under this Indenture has been made under such Authorized Officers' supervision; and

(ii)    to the best of such Authorized Officers' knowledge, based on such review, the Issuer has complied with all conditions and covenants under this Indenture throughout such year, or, if there has been a default in the compliance of any such condition or covenant, specifying each such default known to such Authorized Officers and the nature and status thereof.

SECTION 3.10    Issuer May Consolidate, etc., Only on Certain Terms. (a) The Issuer shall not consolidate or merge with or into any other Person unless:

(i)    the Person (if other than the Issuer) formed by or surviving such consolidation or merger shall be a Person organized and existing under the laws of the United States of America or any State and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on each Class of Notes, and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein;

(ii)    immediately after giving effect to such transaction, no Default shall have occurred and be continuing;

(iii)    the Rating Agency Condition shall have been satisfied with respect to such transaction;

(iv)    the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee) to the effect that such transaction will not have any material adverse Federal tax consequence to the Issuer, any holder of the Notes or any holder of the Certificates;

(v)    any action as is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi)    the Issuer shall have delivered to the Indenture Trustee an Officers' Certificate of the Issuer and an Opinion of Counsel each stating that such consolidation or merger and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with.

(b)    The Issuer shall not convey or transfer all or substantially all its properties or assets, including those included in the Indenture Trust Estate, to any Person unless:

22

Filed in Second Judicial District Court
2/18/2006 11:09:15 PM
Ramsey County, MN

(i)      the Person that acquires by conveyance or transfer the properties and assets of the Issuer the conveyance or transfer of which is hereby restricted shall (A) be a United States citizen or a Person organized and existing under the laws of the United States of America or any State, (B) expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on each Class of Notes and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein, (C) expressly agree by means of such supplemental indenture that all right, title and interest so conveyed or transferred shall be subject and subordinate to the rights of holders of the Notes and (D) unless otherwise provided in such supplemental indenture, expressly agree to indemnify, defend and hold harmless the Issuer against and from any loss, liability or expense arising under or related to this Indenture and the Notes;

(ii)     immediately after giving effect to such transaction, no Default shall have occurred and be continuing;

(iii)    the Rating Agency Condition shall have been satisfied with respect to such transaction;

(iv)     the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee) to the effect that such transaction will not have any material adverse Federal tax consequence to the Issuer, any holder of the Notes, any holder of the Grantor Trust Certificates, or any holder of the Certificates;

(v)      any action as is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi)     the Issuer shall have delivered to the Indenture Trustee an Officers' Certificate of the Issuer and an Opinion of Counsel each stating that such conveyance or transfer and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with.

SECTION 3.11    Successor or Transferee. (a) Upon any consolidation or merger of the Issuer in accordance with Section 3.10(a), the Person formed by or surviving such consolidation or merger (if other than the Issuer) shall succeed to, and be substituted for, and may exercise every right and power of, the Issuer under this Indenture with the same effect as if such Person had been named as the Issuer herein.

(b)      Upon a conveyance or transfer of all the assets and properties of the Issuer pursuant to Section 3.10(b), The National Collegiate Student Loan Trust 2005-3 will be released from every covenant and agreement of this Indenture to be observed or performed on the part of the Issuer with respect to the Notes immediately upon the delivery by the Issuer of written notice to the Indenture Trustee stating that The National Collegiate Student Loan Trust 2005-3 is to be so released.

23

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 11:09:15 AM
Ramsey County, MN

SECTION 3.12     No Other Business. The Issuer shall not engage in any business other than financing, purchasing, owning, selling and servicing the Financed Student Loans and making Additional Fundings in the manner contemplated by this Indenture and the other Basic Documents and activities incidental thereto.

SECTION 3.13     No Borrowing. The Issuer shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes.

SECTION 3.14     Disposing of Financed Student Loans. Other than pursuant to Article V, Financed Student Loans may only be sold, transferred, exchanged or otherwise disposed of by the Indenture Trustee free from the lien of this Indenture (i) for transfer to a Guarantee Agency pursuant to the terms of the applicable Guarantee Agreement; (ii) to a Seller or the Depositor in accordance with the applicable Student Loan Purchase Agreement or the Deposit and Sale Agreement; or (iii) to the Servicer in and, in each case, if the Indenture Trustee is provided with the following:

(a)     an Issuer Order stating the sale price and directing that Financed Student Loans be sold, transferred or otherwise disposed of and delivered to a transferee whose name shall be specified; and

(b)     a certificate signed by an Authorized Officer of the Issuer to the effect that the disposition price is equal to or in excess of the amount required by the applicable Guarantee Agreement in the case of clause (i), by the applicable Student Loan Purchase Agreement in the case of clause (ii), or by the Servicing Agreement in the case of clause (iii).

(c)     Subject to the provisions of this Indenture and except for sales of Financed Student Loans pursuant to this Section 3.14, the Indenture Trustee shall release property from the lien of this Indenture only upon receipt of an Issuer Order, an Opinion of Counsel and independent certificates in accordance with TIA Sections 314(c) and 314(d)(1) or an Opinion of Counsel in lieu of such independent certificates to the effect that the TIA does not require any such independent certificates.

(d)     Each Noteholder, by the acceptance of a Note, acknowledges that from time to time the Indenture Trustee shall release the lien of this Indenture on any Financed Student Loan to be sold pursuant to this Section 3.14, and each Noteholder, by the acceptance of a Note, consents to any such release.

The Indenture Trustee, as a third-party beneficiary under the Student Loan Purchase Agreements entered into by the Depositor, who has assigned its entire right, title and interest in such Student Loan Purchase Agreements to the Issuer pursuant to the terms of the Deposit and Sale Agreement, shall have the right to request the repurchase of loans by the applicable Seller or the Depositor, as the case may be, together with any indemnity payments due thereunder upon the conditions and subject to the provisions contained in the Student Loan Purchase Agreements. The Indenture Trustee shall make such a request to the applicable Seller under the related Student Loan Purchase Agreement or the Depositor under the Deposit and Sale Agreement, as the case may be, to repurchase and, as the case may be, pay any indemnity amounts due with

24

respect to certain specific loans pursuant to the Student Loan Purchase Agreements or the Deposit and Sale Agreement, as applicable, if (i) the Indenture Trustee has actual knowledge that the conditions precedent to such a repurchase or indemnity obligation with respect to such loans have been satisfied; (ii) it has notified the Issuer in writing that such conditions have been satisfied; and (iii) the Issuer has not exercised its right to request the repurchase or indemnity of the applicable loans by the applicable Seller or the Depositor, as the case may be, within 10 days after receiving written notice from the Indenture Trustee.

SECTION 3.15    Guarantees, Loans, Advances and Other Liabilities. Except as contemplated by this Indenture or the other Basic Documents, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

SECTION 3.16    Capital Expenditures. The Issuer shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

SECTION 3.17    Restricted Payments. The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer or to the Depositor, the Servicer, the Administrator or the Back-up Administrator, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; *provided, however*, that the Issuer may make, or cause to be made, distributions to such persons as contemplated by, and to the extent funds are available for such purpose under, this Indenture and the other Basic Documents. The Issuer will not, directly or indirectly, make payments to or distributions from the Collection Account except in accordance with this Indenture and the other Basic Documents.

SECTION 3.18    Notice of Events of Default. The Issuer shall give the Indenture Trustee and the Rating Agencies prompt written notice of each Event of Default hereunder and each default on the part of the Servicer of its obligations under the Servicing Agreement or the Administrator of its obligations under the Administration Agreement. In addition, the Issuer shall deliver to the Indenture Trustee, within five days after the occurrence thereof, written notice in the form of an Officers' Certificate of the Issuer of any event which with the giving of notice and the lapse of time would become an Event of Default under Section 5.01(iii), its status and what action the Issuer is taking or proposes to take with respect thereto.

SECTION 3.19    Further Instruments and Acts. Upon request of the Indenture Trustee, the Issuer will execute and deliver such further instruments and do such further acts as

25

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

SECTION 3.20    Additional Covenants. The Issuer covenants that it will acquire or cause to be acquired Student Loans as described herein. The Noteholders shall not in any circumstances be deemed to be the owner or holder of the Financed Student Loans.

The Issuer, or its designated agent, shall be responsible for each of the following actions:

(a)    The Issuer, or its designated agent, shall cause the benefits of the Guarantee Agreements to flow to the Indenture Trustee.

(b)    The Indenture Trustee shall have no obligation to administer, service or collect the loans in the Indenture Trust Estate or to maintain or monitor the administration, servicing or collection of such loans.

(c)    The Issuer shall comply with all United States statutes, rules and regulations which apply to the Student Loan Programs, the Program Manual and the Financed Student Loans.

(d)    The Issuer shall cause to be diligently enforced and taken all reasonable steps, actions and proceedings necessary for the enforcement of all terms, covenants and conditions of all Financed Student Loans made and agreements in connection therewith, including the prompt payment of all principal and interest payments and all other amounts due the Issuer thereunder. The Issuer shall not permit the release of the obligations of any borrower under any Financed Student Loan and shall at all times, to the extent permitted by law, cause to be defended, enforced, preserved and protected the rights and privileges of the Issuer, the Indenture Trustee and of the Noteholders under or with respect to each Financed Student Loan and agreement in connection therewith.

(e)    The Issuer shall take all appropriate action to ensure that at the time each Student Loan becomes a part of the Indenture Trust Estate it shall be free and clear from all liens.

(f)    The Issuer shall diligently enforce, and take all steps, actions and proceedings reasonably necessary to protect its rights with respect to each Financed Student Loan, and to maintain any guarantee (including the Guarantee issued by TERI) on and to enforce all terms, covenants and conditions of Financed Student Loans, including its rights and remedies under the Deposit and Sale Agreement and the TERI Pledge Fund.

The Trustee shall not be deemed to be the designated agent for the purposes of this Section unless it has agreed in writing to be such agent.

SECTION 3.21    Covenant Regarding Financed Student Loans. The Issuer hereby covenants that all Student Loans to be acquired hereunder will meet the following:

(a)    Each Student Loan is evidenced by an executed promissory note, which note is a valid and binding obligation of the Obligor, enforceable by or on behalf of the holder

26

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:09:15 RM
Ramsey County, MN

thereof in accordance with its terms, subject to bankruptcy, insolvency and other laws relating to or affecting creditors' rights.

(b)     The amount of the unpaid principal balance of each Student Loan is due and owing, and no counterclaim, offset, defense or right to rescission exists with respect to any such Student Loan which can be asserted and maintained or which, with notice, lapse of time, or the occurrence or failure to occur of any act or event, could be asserted and maintained by the Obligor against the Issuer as assignee thereof. The Issuer shall take all reasonable actions to assure that no maker of a Student Loan has or may acquire a defense to the payment thereof.

(c)     No Student Loan has a payment that is more than 90 days overdue other than such Student Loans that, in the aggregate, do not exceed 1.00% of the then aggregate outstanding principal amount of the Student Loans.

(d)     The Issuer has full right, title and interest in each Student Loan free and clear of all liens, pledges or encumbrances whatsoever.

(e)     Each Student Loan was made in compliance with all applicable state and federal laws, rules and regulations, including, without limitation, all applicable nondiscrimination, truth-in-lending, consumer credit and usury laws.

(f)     All loan documentation shall be delivered to the Servicer (as custodian for the Indenture Trustee) prior to payment of the purchase price of such Student Loan.

(g)     Each Student Loan is accruing interest (whether or not such interest is being paid currently by the borrower or is being capitalized), except as otherwise expressly permitted by this Indenture.

(h)     Each Student Loan was originated in conformity with the "loan acceptance criteria" (including, without limitation, any general policies, eligible borrower criteria, creditworthiness criteria and "good credit" criteria) and the "loan program terms" (including, without limitation, the loan amount, the interest rate and the guaranty fee) (or any similar criteria or terms, however so designated, under the applicable Program Manual) contained in the Program Manual and otherwise, in substantial conformity with the Program Manual.

(i)     Each Student Loan is guaranteed by a Guarantee Agency.

SECTION 3.22     Additional Representations of the Issuer. The Issuer hereby makes the following representations and warranties to the Indenture Trustee, on behalf of the Noteholders:

(a)     *Valid and Continuing Security Interest*. This Indenture creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code ("UCC") in effect in the State of Delaware) in the Financed Student Loans and all other assets constituting part of the Indenture Trust Estate in favor of the Indenture Trustee, which security interest is prior to all other liens, charges, security interests, mortgages or other encumbrances, and is enforceable as such as against creditors of and purchasers from the Issuer.

27

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

    (b)    *Accounts*. The Financed Student Loans constitute "accounts" or "payment intangibles" within the meaning of the applicable UCC.

    (c)    *Good and Marketable Title*. The Issuer owns and has good and marketable title to the Financed Student Loans and all other assets constituting part of the Indenture Trust Estate free and clear of any lien, charge, security interest, mortgage or other encumbrance, claim or encumbrance of any Person, other that those granted pursuant to this Indenture.

    (d)    *Perfection by Filing*. The Issuer has caused or will have caused, within ten days of the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in the Financed Student Loans and all other assets of the Indenture Trust Estate granted to the Trustee hereunder.

    (e)    *Perfection by Possession*. The Issuer has given the Indenture Trustee a copy of a written acknowledgment from the applicable custodian that the custodian is holding executed copies of the promissory notes and master promissory notes that constitute or evidence the Financed Student Loans, and that such custodian is holding such notes solely on behalf and for the benefit of the Indenture Trustee.

    (f)    *Priority*. Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Financed Student Loans or any other portion of the Indenture Trust Estate. The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Financed Student Loans or any other portion of the Indenture Trust Estate other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer.

    (g)    *Valid Business Reasons; No Fraudulent Transfers*. The transactions contemplated by this Indenture are in the ordinary course of the Issuer's business and the Issuer has valid business reasons for granting the Indenture Trust Estate pursuant to this Indenture. At the time of each such grant: (i) the Issuer granted the Indenture Trust Estate to the Indenture Trustee without any intent to hinder, delay, or defraud any current or future creditor of the Issuer; (ii) the Issuer was not insolvent and did not become insolvent as a result of any such grant; (iii) the Issuer was not engaged and was not about to engage in any business or transaction for which any property remaining with such entity was an unreasonably small capital or for which the remaining assets of such entity are unreasonably small in relation to the business of such entity or the transaction; (iv) the Issuer did not intend to incur, and did not believe or should not have reasonably believed, that it would incur, debts beyond its ability to pay as they become due; and (v) the consideration paid received by the Issuer for the grant of the Indenture Trust Estate was reasonably equivalent to the value of the related grant.

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

SECTION 3.23     Issuer Separateness Covenants.  So long as any of the Notes are Outstanding:

(a)     The Issuer shall not engage in any business or activity other than in connection with the activities contemplated hereby and in the Basic Documents, and in connection with the issuance of Notes.

(b)     The funds and other assets of the Issuer shall not be commingled with those of any other individual, corporation, estate, partnership, joint venture, association, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof.

(c)     The Issuer shall not be, become or hold itself out as being liable for the debts of any other party.

(d)     The Issuer shall not form, or cause to be formed, any subsidiaries.

(e)     The Issuer shall act solely in its own name and through its duly authorized officers or agents in the conduct of its business, and shall conduct its business so as not to mislead others as to the identity of the entity with which they are concerned.

(f)     The Issuer shall maintain its records and books of account and shall not commingle its records and books of account with the records and books of account of any other Person.  The books of the Issuer may be kept (subject to any provision contained in the statutes) inside or outside the State of Delaware at such place or places as may be designated from time to time by the board of trustees or in the bylaws of the Issuer.

(g)     All actions of the Issuer shall be taken by a duly authorized officer or agent of the Issuer.

(h)     The Issuer shall not amend, alter, change or repeal any provision contained in this Section without (i) the prior written consent of the Indenture Trustee, and (ii) satisfying the Rating Agency Condition.

(i)     The Issuer shall not amend its organizational documents or change its jurisdiction of formation without first satisfying the Rating Agency Condition.

(j)     All audited financial statements of the Issuer that are consolidated with those of any Affiliate thereof will contain detailed notes clearly stating that (i) all of the Issuer's assets are owned by the Issuer, and (ii) the Issuer is a separate entity with creditors who have received ownership and/or security interests in the Issuer's assets.

(k)     The Issuer will strictly observe legal formalities in its dealings with any of its Affiliates, and funds or other assets of the Issuer will not be commingled with those of any of its Affiliates.  The Issuer shall not maintain joint bank accounts or other depository accounts to which any of its Affiliates has independent access.  None of the Issuer's funds will at any time be pooled with the funds of any of its Affiliates.

29

SSL-DOCS2 70240931v7

(l)      The Issuer will maintain an arm's length relationship with each Seller (and any Affiliate thereof), the Depositor (and any Affiliate thereof), and any of the Issuer's Affiliates. Any Person that renders or otherwise furnishes services to the Issuer will be compensated by the Issuer at market rates for such services it renders or otherwise furnishes to the Issuer except as otherwise provided in this Indenture. The Issuer will not hold itself out to be responsible for the debts of the Seller, or the Depositor, the parent or the decisions or actions respecting the daily business and affairs of the Seller, the Depositor or the parent.

(m)      The Issuer shall not sell, transfer, exchange or otherwise dispose of any portion of the Indenture Trust Estate except as expressly permitted by this Indenture.

(n)      The Issuer shall not claim any credit on, or make any deduction from, the principal amount of any of the Notes by reason of the payment of any taxes levied or assessed upon any portion of the Indenture Trust Estate.

(o)      The Issuer shall not permit the validity or effectiveness of this Indenture or any grant hereunder to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations under this Indenture, except as may be expressly permitted hereby.

SECTION 3.24      Reports by Issuer. The Issuer will:

(a)      File with the Indenture Trustee, within 15 days after the Issuer is required to file the same with the SEC, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may from time to time by rules and regulations prescribe), if any, which the Issuer may be required to file with the SEC pursuant to Section 13 or Section 15(d) of the Exchange Act;

(b)      File with the Indenture Trustee and the SEC, in accordance with rules and regulations prescribed from time to time by the SEC, such additional information, documents and reports, if any, with respect to compliance by the Issuer with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(c)      Transmit by mail to the Noteholders, within 30 days after the filing thereof with the Indenture Trustee, in the manner and to the extent provided in TIA Section 313(c), such summaries of any information, documents and reports required to be filed by the Issuer, if any, pursuant to Section 3.24(a) and (b) as may be required by rules and regulations prescribed from time to time by the SEC.

The Indenture Trustee may conclusively rely and accept such reports from the Issuer as fulfilling the requirements of this Section 3.24, with no further duty to examine such reports or to determine whether such reports comply with the prescribed timing, rules and regulations of the SEC. Delivery of such reports to the Indenture Trustee is for informational purposes only and the Indenture Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Indenture Trustee is entitled to rely on an Officers' Certificate).

30

SSL-DOCS2 70240931v7

SECTION 3.25    Rule 144A Information. For so long as any of the Private Notes are outstanding and are "restricted securities" within the meaning of Rule 144(a)(3) of the Securities Act, (i) the Issuer will provide or cause to be provided to any holder of such Notes and any prospective purchaser thereof designated by such a holder, upon the request of such holder or prospective purchaser, the information required to be provided to such holder or prospective purchaser by Rule 144A(d)(4) under the Securities Act; and (ii) the Issuer shall update such information from time to time in order to prevent such information from becoming false and misleading and will take such other actions as are necessary to ensure that the safe harbor exemption from the registration requirements of the Securities Act under Rule 144A is and will be available for resales of such Private Notes conducted in accordance with Rule 144A.

## ARTICLE IV

### Satisfaction and Discharge

SECTION 4.01    Satisfaction and Discharge of Indenture. This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of holders of the Notes to receive payments of principal thereof and interest thereon, (iv) Sections 3.03, 3.04, 3.05, 3.08, 3.10, 3.12 and 3.13, (v) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and the obligations of the Indenture Trustee under Section 4.02) and (vi) the rights of holders of the Notes, as beneficiaries hereof with respect to the property so deposited with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when:

(A)    a period of 367 days has expired after all Notes theretofore authenticated and delivered (other than (i) Notes that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 2.05 and (ii) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation;

(B)    a period of 367 days has expired after the later of (i) the date on which no Notes are outstanding or (ii) the date on which the Issuer has paid or caused to be paid all other sums otherwise payable hereunder by the Issuer; and

(C)    the Issuer has delivered to the Indenture Trustee an Officers' Certificate of the Issuer and an Opinion of Counsel, each meeting the applicable requirements of Section 11.01 and, subject to Section 11.02, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

31

SECTION 4.02     Application of Trust Money. All moneys deposited with the Indenture Trustee pursuant to Section 4.01 hereof shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent, as the Indenture Trustee may determine, to the holders of the particular Notes for the payment of which such moneys have been deposited with the Indenture Trustee, of all sums due and to become due thereon for principal of and interest on each Class of Notes; but such moneys need not be segregated from other funds except to the extent required herein or required by law.

SECTION 4.03     Repayment of Moneys Held by Paying Agent. In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all moneys then held by any Paying Agent other than the Indenture Trustee under the provisions of this Indenture with respect to such Notes shall, upon demand of the Issuer, be paid to the Indenture Trustee to be held and applied according to Section 3.03 and thereupon such Paying Agent shall be released from all further liability with respect to such moneys.

## ARTICLE V

### Remedies

SECTION 5.01     Events of Default. "Event of Default", wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(i)     default in the payment of any interest on any Note when the same becomes due and payable, and such default shall continue for a period of three (3) Business Days (*provided, however*, so long as (x) any of the Class A Notes are outstanding, each holder of any Class B Note or Class C Note or the Note Owner of any such Class B Note or Class C Note by such holder's acceptance of such Class B Note or Class C Note or beneficial interest therein, as the case may be, shall be deemed to have consented to the delay in payment of interest on such Class B Note or Class C Note and to have waived its right to institute suit for enforcement of any such payment, or (y) any of the Class B Notes are outstanding, each holder of any Class C Note or the Note Owner of any such Class C Note by such holder's acceptance of such Class C Note or beneficial interest therein, as the case may be, shall be deemed to have consented to the delay in payment of interest on such Class C Note and to have waived its right to institute suit for enforcement of any such payment); or

(ii)     default in the payment of the principal of any Note (x) when the same becomes due and payable (but only to the extent there exists sufficient Available Funds, therefor), or (y) on the Final Maturity Date with respect thereto; or

(iii)     default in the observance or performance of any covenant or agreement of the Issuer made in this Indenture or any other Basic Document (other than a covenant or agreement, a default in the observance or performance of which is elsewhere

32

in this Section specifically dealt with), or any representation or warranty of the Issuer made in this Indenture or any other Basic Document or in any certificate or other writing delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made, and such default shall continue or not be cured, or the circumstance or condition in respect of which such misrepresentation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Interested Noteholders, representing not less than 25% of the Outstanding Amount of the applicable Classes of Notes; a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of Default hereunder; or

       (iv)    the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Indenture Trust Estate in an involuntary case under any applicable Federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Indenture Trust Estate, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

       (v)    the commencement by the Issuer of a voluntary case under any applicable Federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Indenture Trust Estate, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of action by the Issuer in furtherance of any of the foregoing.

      SECTION 5.02    Acceleration of Maturity; Rescission and Annulment. If an Event of Default should occur and be continuing, then and in every such case the Indenture Trustee at the direction of the Interested Noteholders representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, shall declare all the Notes to be immediately due and payable, by a notice in writing to the Issuer (and to the Indenture Trustee if given by the holders of the Notes), and upon any such declaration the unpaid principal amount of the Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

At any time after such declaration of acceleration of maturity has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter in this Article V provided, the Interested Noteholders representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, by written notice to the Issuer and the Indenture Trustee, may rescind and annul such declaration and its consequences if:

       (i)     the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

       (A)    all payments of principal of and interest on all Notes, and all other amounts that would then be due hereunder or upon such Notes if the Event of Default giving rise to such acceleration had not occurred; and

       (B)    all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel; and

       (ii)    all Events of Default, other than the nonpayment of the principal of the Notes that have become due solely by such acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

       SECTION 5.03   Collection of Indebtedness and Suits for Enforcement by Indenture Trustee. (a) The Issuer covenants that if (i) default is made in the payment of any interest on any Note when the same becomes due and payable, and such default continues for a period of three Business Days, or (ii) default is made in the payment of the principal on the related Final Maturity Date of a Class of Notes when the same becomes due and payable in accordance with Section 2.07(b), the Issuer will, upon demand of the Indenture Trustee, pay to the Indenture Trustee, for the benefit of the holders of the Notes, the whole amount then due and payable on such Notes for principal and interest, with interest upon the overdue principal, and, to the extent payment at such rate of interest shall be legally enforceable, upon overdue installments of interest at the rate specified in Section 2.07 and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel.

       (b)    In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, may, or shall at the written direction of the Interested Noteholders, representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, institute a Proceeding for the collection of the sums so due and unpaid, and prosecute such Proceeding to judgment or final decree, and enforce the same against the Issuer or other obligor upon such Notes, and collect in the manner provided by law out of the property of the Issuer or other obligor upon such Notes wherever situated, the moneys adjudged or decreed to be payable.

       (c)    If an Event of Default occurs and is continuing, the Indenture Trustee may, or shall at the written direction of the Interested Noteholders, representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, as more particularly provided in Section 5.04, proceed to protect and enforce its rights, the rights of the holders of the Notes, as applicable, by such appropriate Proceedings as the Indenture Trustee shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or

34

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d)     In case there shall be pending, relative to the Issuer or any other obligor upon the Notes, or any Person having or claiming an ownership interest in the Indenture Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable Federal or state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuer or other obligor upon the Notes, or to the creditors or property of the Issuer or such other obligor, the Indenture Trustee, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, may, or shall at the written direction of the Interested Noteholders representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, be entitled and empowered, by intervention in such proceedings or otherwise:

(i)     to file and prove a claim or claims for the whole amount of principal of and interest on each Class of Notes owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence or bad faith) and the holders of the Notes allowed in such Proceedings;

(ii)     unless prohibited by applicable law and regulations, to vote on behalf of the holders of the Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)     to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the holders of the Notes and of the Indenture Trustee on their behalf;

(iv)     to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee or the holders of the Notes allowed in any judicial proceedings relative to the Issuer, its creditors and its property; and

(v)     to take any other action with respect to such claims including participating as a member of any official committee of creditor's appointed in the matters as it deems necessary or advisable;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such holders of the Notes to make payments to the

35

62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2006 1:08:15 AM
Ramsey County, MN

Indenture Trustee, and, in the event that the Indenture Trustee shall consent to the making of payments directly to such holders of the Notes to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee except as a result of negligence or bad faith.

(e)     Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any holder of the Notes any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any holder of the Notes thereof or to authorize the Indenture Trustee to vote in respect of the claim of any holder of the Notes in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f)     All rights of action and of asserting claims under this Indenture, or under any of the Notes may be enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any such action or Proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit of the holders of the Notes.

(g)     In any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the holders of the Notes and it shall not be necessary to make any holder of the Notes a party to any such Proceedings.

SECTION 5.04    Remedies; Priorities.  (a)  If an Event of Default shall have occurred and be continuing, the Indenture Trustee may, or shall at the written direction of the Interested Noteholders representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes (or such different percentage as set forth below), do one or more of the following (subject to Section 5.05):

(i)     institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Issuer and any other obligor upon such Notes moneys adjudged due;

(ii)     institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Indenture Trust Estate securing the Notes;

(iii)     exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the holders of the Notes; and

36

(iv)     sell the Indenture Trust Estate securing the Notes or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law;

*provided, however*, that the Indenture Trustee may not sell or otherwise liquidate the Indenture Trust Estate securing the Notes following an Event of Default, other than an Event of Default described in Section 5.01(i) or (ii), unless (x) 100% of the Noteholders consent to such sale, (y) the proceeds of such sale are sufficient to pay in full the principal of and the accrued interest on the Notes or (z) the Indenture Trustee determines that the collections on the Financed Student Loans would not be sufficient on an ongoing basis to make all payments on the Notes as such payments would have become due if such obligations had not been declared due and payable, and the Indenture Trustee obtains the consent of the holders of Notes, representing not less than a 66.67% of the Outstanding Amount of the Notes.

(b)     If the Indenture Trustee collects any money or property under this Article V following the occurrence and during the continuation of an Event of Default with respect to Sections 5.01(i) or 5.01(ii) above or following the acceleration of the Notes pursuant to Section 5.02 upon an Event of Default with respect to Sections 5.01(i) or 5.01(ii) above, it shall pay out the money or property in the following order:

FIRST: pro rata based upon amounts owed to the Owner Trustee for amounts due under Article X of the Trust Agreement, to the Indenture Trustee for amounts due under Section 6.07, to the Irish Paying Agent for amounts due under the Irish Paying Agent Agreement, to the Grantor Trustee for amounts due under the Grantor Trust Agreement, to the Back-up Administrator for amounts due under the Back-up Administration Agreement, not to exceed $250,000 per annum in the aggregate, and (ii) to the Servicer and the Administrator, the unpaid fees owed by the Issuer to such parties;

SECOND: to the holders of the Class A Notes for amounts due and unpaid on the Class A Notes for interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Class A Notes for interest;

THIRD: to the holders of the Class A Notes for amounts due and unpaid on the Class A Notes for principal, ratably, without preference or priority of any kind, according to the amounts due and payable on the Class A Notes for principal, until the Outstanding Amount of the Class A Notes is zero.

FOURTH: to the holders of the Class B Notes for amounts due and unpaid on the Class B Notes for interest, without preference or priority of any kind, according to the amounts due and payable on the Class B Notes for interest;

FIFTH: to the holders of the Class B Notes for amounts due and unpaid on the Class B Notes for principal, without preference or priority of any kind, according to the amounts due and payable on the Class B Notes for principal, until the Outstanding Amount of the Class B Notes is zero;

Filed in Second Judicial District Court
2/07/2006 11:09:15 AM
Ramsey County, MN

SIXTH: to the holders of the Class C Notes for amounts due and unpaid on the Class C Notes for interest, without preference or priority of any kind, according to the amounts due and payable on the Class C Notes for interest;

SEVENTH: to the holders of the Class C Notes for amounts due and unpaid on the Class C Notes for principal, without preference or priority of any kind, according to the amounts due and payable on the Class C Notes for principal, until the Outstanding Amount of the Class C Notes is zero;

EIGHTH: pro rata based upon amounts owed, to the Owner Trustee, the Indenture Trustee, the Irish Paying Agent, the Grantor Trustee and the Back-up Administrator, for all amounts due and owing to such parties under the Basic Documents to the extent not paid pursuant to priority FIRST above, to FMC, for any unreimbursed Advances made pursuant to Section 8.11, and to the Servicer, the Administrator and the Guarantee Agency, for all amounts due and owing to such parties pursuant to the Basic Documents,

NINTH: to the holders of the Class A-5 Notes any Prepayment Penalties remaining unpaid from prior Distribution Dates; and

TENTH: to the Owner Trustee (on behalf of the Issuer), for distribution to the Certificateholders in accordance with the terms of the Trust Agreement.

The Indenture Trustee may fix a record date and payment date for any payment to the holders of the Notes pursuant to this Section. At least 15 days before such record date, the Issuer shall mail to each holder of the Notes and the Indenture Trustee a notice that states the record date, the payment date and the amount to be paid.

(c)     If the Indenture Trustee collects any money or property under this Article V following the occurrence and during the continuation of an Event of Default other than with respect to Sections 5.01(i) or 5.01(ii) above or following the acceleration of the Notes pursuant to Section 5.02 upon an Event of Default other than with respect to Sections 5.01(i) or 5.01(ii) above, it shall pay out the money or property in the following order:

FIRST: pro rata based upon amounts owed (i) to the Owner Trustee for amounts due under Article X of the Trust Agreement, to the Indenture Trustee for amounts due under Section 6.07, to the Irish Paying Agent for amounts due under the Irish Paying Agent Agreement, to the Grantor Trustee for amounts due under the Grantor Trust Agreement, to the Back-up Administrator for amounts due under the Back-up Administration Agreement, not to exceed $250,000 per annum in the aggregate, and (ii) to the Servicer and the Administrator, the unpaid fees owed by the Issuer to such parties;

SECOND: to the holders of the Class A Notes for amounts due and unpaid on the Class A Notes for interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Class A Notes for interest;

THIRD: to the holders of the Class B Notes for amounts due and unpaid on the Class B Notes for interest, without preference or priority of any kind, according to the amounts due and payable on the Class B Notes for interest;

38

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

FOURTH: to the holders of the Class C Notes for amounts due and unpaid on the Class C Notes for interest, without preference or priority of any kind, according to the amounts due and payable on the Class C Notes for interest;

FIFTH: to the holders of the Class A Notes for amounts due and unpaid on the Class A Notes for principal, ratably, without preference or priority of any kind, according to the amounts due and payable on the Class A Notes for principal, until the Outstanding Amount of the Class A Notes is zero.

SIXTH: to the holders of the Class B Notes for amounts due and unpaid on the Class B Notes for principal, without preference or priority of any kind, according to the amounts due and payable on the Class B Notes for principal, until the Outstanding Amount of the Class B Notes is zero;

SEVENTH: to the holders of the Class C Notes for amounts due and unpaid on the Class C Notes for principal, without preference or priority of any kind, according to the amounts due and payable on the Class C Notes for principal, until the Outstanding Amount of the Class C Notes is zero;

EIGHTH: pro rata based upon amounts owed, to the Owner Trustee, the Indenture Trustee, the Irish Paying Agent, the Grantor Trustee and the Back-up Administrator, for all amounts due and owing to such parties under the Basic Documents to the extent not paid pursuant to priority FIRST above, to FMC, for any unreimbursed Advances made pursuant to Section 8.11, and to the Servicer, the Administrator and the Guarantee Agency, for all amounts due and owing to such parties pursuant to the Basic Documents;

NINTH: to the holders of the Class A-5 Notes any Prepayment Penalties remaining unpaid from prior Distribution Dates; and

TENTH: to the Owner Trustee (on behalf of the Issuer), for distribution to the Certificateholders in accordance with the terms of the Trust Agreement.

SECTION 5.05    Optional Preservation of the Financed Student Loans. If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, or shall at the written direction of the Interested Noteholders, representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, elect to maintain possession of the related Indenture Trust Estate. It is the desire of the parties hereto and the holders of the Notes that there be at all times sufficient funds for the payment of principal of and interest on each Class of Notes, and the Indenture Trustee shall take such desire into account when determining whether or not to maintain possession of the Indenture Trust Estate. In determining whether to maintain possession of the Indenture Trust Estate, the Indenture Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Indenture Trust Estate for such purpose.

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

SECTION 5.06    Limitation of Suits. No holder of the Notes shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless the following conditions listed below are satisfied:

(i)    such holder of the Notes has previously given written notice to the Indenture Trustee of a continuing Event of Default;

(ii)    the holders of not less than 25% of the Outstanding Amount of the Notes, in the aggregate, have made written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(iii)    such holders of the Notes have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in complying with such request;

(iv)    the Indenture Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such Proceeding; and

(v)    no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the holders of a majority of the Outstanding Amount of the Notes in the aggregate;

it being understood and intended that no one or more holders of the Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other holders of the Notes or to obtain or to seek to obtain priority or preference over any other holders of the Notes or to enforce any right under this Indenture, except in the manner herein provided.

If the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Noteholders, each representing less than a majority of the Outstanding Amount of the Notes, the Indenture Trustee in its sole discretion may determine what action, if any, shall be taken, notwithstanding any other provisions of this Indenture.

SECTION 5.07    Unconditional Rights of Noteholders To Receive Principal and Interest. Notwithstanding any other provisions in this Indenture, any holder of any Class of Notes shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, on such Note, on or after the respective due dates thereof expressed in such Note or in this Indenture and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such holder of any such Class of Notes.

SECTION 5.08    Restoration of Rights and Remedies. If the Indenture Trustee or any holder of Notes has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee or to such holder of Notes, then and in every such case the Issuer, the Indenture Trustee and the holders of the Notes shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

hereunder, and thereafter all rights and remedies of the Indenture Trustee and the holders of the Notes shall continue as though no such Proceeding had been instituted.

SECTION 5.09    Rights and Remedies Cumulative. No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the holders of the Notes is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

SECTION 5.10    Delay or Omission Not a Waiver. No delay or omission of the Indenture Trustee or any holder of Notes to exercise any right or remedy accruing upon any Default shall impair any such right or remedy or constitute a waiver of any such Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Indenture Trustee or to the holders of the Notes may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the holders of the Notes.

SECTION 5.11    Control by Noteholders. With respect to the Notes, the Interested Noteholders, representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes (or, in each case, if only one Class is affected thereby, a majority of the Outstanding Amount of such Class) shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee; provided that:

(i)     such direction shall not be in conflict with any rule of law or with this Indenture;

(ii)    subject to the express terms of Section 5.04, any direction to the Indenture Trustee to sell or liquidate the Indenture Trust Estate shall be by the holders of not less than 100% of the Outstanding Amount of the Notes;

(iii)   if the conditions set forth in Section 5.05 have been satisfied and the Indenture Trustee elects to retain the Indenture Trust Estate pursuant to such Section, then any direction to the Indenture Trustee by the holders of less than 100% of the Outstanding Amount of the Notes, to sell or liquidate the Indenture Trust Estate shall be of no force and effect; and

(iv)    the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction;

*provided, however*, that, subject to Section 6.01, the Indenture Trustee need not take any action that it determines might involve it in liability or might materially adversely affect the rights of any holders of the Notes not consenting to such action.

SECTION 5.12    Waiver of Past Defaults. Prior to the declaration of the acceleration of the Notes as provided in Section 5.02, the Interested Noteholders representing not less than a majority of the Outstanding Amount of the applicable Classes of Notes, may waive

41

Filed in Second Judicial District Court
2/8/2005 11:09:15 PM
Ramsey County, MN

any past Default and its consequences except a Default (a) in payment when due of principal of or interest on any Note or (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of each holder of the Notes. In the case of any such waiver, the Issuer, the Indenture Trustee and the holders of the Notes shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.

Upon any such waiver, such Default shall cease to exist and be deemed to have been cured and not to have occurred for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.

SECTION 5.13   Undertaking for Costs. All parties to this Indenture agree, and each holder of the Notes by such Noteholder's acceptance of any Note shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any holder of the Notes or group of holders of the Notes, in each case holding in the aggregate more than 10% of the Outstanding Amount of the Notes or (c) any suit instituted by any holder of the Notes for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

SECTION 5.14   Waiver of Stay or Extension Laws. The Issuer covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

SECTION 5.15   Action on Notes. The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the holders of the Notes shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuer or by the levy of any execution under such judgment upon any portion of the Indenture Trust Estate or upon any of the assets of the Issuer. Any money or property collected by the Indenture Trustee shall be applied in accordance with Section 5.04(b) or (c), as the case may be.

SECTION 5.16   Performance and Enforcement of Certain Obligations. (a) Promptly following a request from the Indenture Trustee, and at the Administrator's expense, the Issuer shall take all such lawful action as the Indenture Trustee may request to compel or secure

42

Filed in Second Judicial District Court
2/3/2006 11:08:15 RM
Ramsey County, MN

the performance and observance by the Depositor, the Sellers, the Administrator, the Back-up Administrator, and the Servicer, as applicable, of each of their obligations to the Issuer under or in connection with the Basic Documents in accordance with the terms thereof, and to exercise any and all rights, remedies, powers and privileges lawfully available to the Issuer under or in connection with the Basic Documents, including the transmission of notices of default and the institution of legal or administrative actions or proceedings to compel or secure performance by the Depositor, the Sellers, the Administrator, the Back-up Administrator or the Servicer of each of their obligations under the Basic Documents.

(b)    If an Event of Default has occurred and is continuing, the Indenture Trustee shall at the direction (which direction shall be in writing or by telephone (confirmed in writing promptly thereafter)) of the Interested Noteholders, representing not less than 66.67% of the Outstanding Amount of the applicable Classes of Notes, exercise all rights, remedies, powers, privileges and claims of the Issuer against the Depositor, the Sellers, the Administrator, the Back-up Administrator, the Servicer or the Guarantee Agency under or in connection with the Basic Documents, including the right or power to take any action to compel or secure performance or observance by the Depositor, the Sellers, the Administrator, the Back-up Administrator and the Servicer of each of their obligations to the Issuer thereunder and to give any consent, request, notice, direction, approval, extension or waiver under the Basic Documents and any right of the Issuer to take such action shall be suspended.

SECTION 5.17    Notice of Defaults. Within 90 days after the occurrence of any Default hereunder with respect to the Notes, the Indenture Trustee shall transmit in the manner and to the extent provided in TIA Section 313(c), notice of such Default hereunder to which a Responsible Officer of the Indenture Trustee has actual knowledge or is in receipt of a written notice thereof in accordance with the terms of this Indenture, unless such Default shall have been cured or waived; *provided, however*, that, except in the case of a Default in the payment of the principal of or interest with respect to any Note, the Indenture Trustee shall be protected in withholding such notice if and so long as a Responsible Officer of the Indenture Trustee in good faith determines that the withholding of such notice is in the interest of the Noteholders.

## ARTICLE VI

### The Indenture Trustee

SECTION 6.01    Duties of Indenture Trustee. (a) If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b)    Except during the continuance of an Event of Default:

(i)    the Indenture Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and the other Basic Documents to which the Indenture Trustee is a party, and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

SSL-DOCS2 70240931v7

(ii)     in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to a Responsible Officer of the Indenture Trustee and conforming to the requirements of this Indenture; *provided, however*, that the Indenture Trustee shall examine the certificates and opinions to determine whether or not they conform to the requirements of this Indenture.

(c)     The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)     this paragraph does not limit the effect of paragraph (b) of this Section;

(ii)     the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts; and

(iii)     the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 5.11.

(d)     Every provision of this Indenture that in any way relates to the Indenture Trustee is subject to paragraphs (a), (b), (c) and (g) of this Section 6.01.

(e)     The Indenture Trustee shall not be liable for interest on any money received by it except as the Indenture Trustee may agree in writing with the Issuer.

(f)     Money held in trust by the Indenture Trustee need not be segregated from other funds except to the extent required by law or the terms of this Indenture.

(g)     No provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayments of such funds or adequate indemnity satisfactory to it against any loss, liability or expense is not reasonably assured to it.

(h)     Except as expressly provided in the Basic Documents, the Indenture Trustee shall have no obligation to administer, service or collect the Financed Student Loans or to maintain, monitor or otherwise supervise the administration, servicing or collection of the Financed Student Loans.

(i)     In the event that the Indenture Trustee is the Paying Agent or the Note Registrar, the rights and protections afforded to the Indenture Trustee pursuant to this Indenture shall also be afforded to the Indenture Trustee in its capacity as Paying Agent or Note Registrar.

(j)     Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section 6.01.

44

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/07/2006 1:08:15 RM
Ramsey County, MN

SECTION 6.02    Rights of Indenture Trustee. (a) The Indenture Trustee may rely on any document believed by it to be genuine and to have been signed or presented by the proper Person. The Indenture Trustee need not investigate any fact or matter stated in such document.

(b)    Before the Indenture Trustee acts or refrains from acting, it may require an Officers' Certificate of the Issuer or an Opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such Officers' Certificate or Opinion of Counsel.

(c)    The Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a custodian or nominee, and the Indenture Trustee shall not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent, attorney, custodian or nominee appointed with due care by it hereunder.

(d)    The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; *provided*, *however*, that the Indenture Trustee's conduct does not constitute willful misconduct, negligence or bad faith.

(e)    The Indenture Trustee may consult with counsel, and the advice or opinion of counsel with respect to legal matters relating to this Indenture and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

(f)    In the event that the Person acting as Indenture Trustee is also acting as securities intermediary, all the rights, powers, immunities and indemnities afforded to the Indenture Trustee under the Basic Documents shall also be afforded to the securities intermediary.

(g)    Absent willful misconduct or fraud, the Indenture Trustee shall not be liable for any punitive damages, regardless of the form of action and whether or not any such damages were foreseeable or contemplated.

(h)    The Indenture Trustee shall not be deemed to have notice of any Default or Event of Default unless a Responsible Officer of the Indenture Trustee has actual knowledge thereof or unless written notice of any event which is in fact such Default or Event of Default is received by the Indenture Trustee at the Corporate Trust Office, and such notice references the Notes under this Indenture.

(i)    Any permissive right or authority granted to the Indenture Trustee shall not be construed as a mandatory duty.

SECTION 6.03    Individual Rights of Indenture Trustee. The Indenture Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuer or its Affiliates with the same rights it would have if it were not

45

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

Indenture Trustee. Any Paying Agent, Note Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Indenture Trustee must comply with Section 6.11.

SECTION 6.04    Indenture Trustee's Disclaimer. The Indenture Trustee shall not be responsible for and makes no representation as to the validity or adequacy of this Indenture or the Notes, it shall not be accountable for the Issuer's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Issuer in the Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Indenture Trustee's certificate of authentication.

SECTION 6.05    Notice of Defaults. If a Default occurs and is continuing and if it is either actually known or written notice of the existence thereof has been received by a Responsible Officer of the Indenture Trustee, the Indenture Trustee shall mail to each holder of the Notes notice of the Default within 90 days after it occurs. Except in the case of a Default in payment of principal of or interest on the Notes, the Indenture Trustee may withhold the notice to the holders of the Notes if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the interests of holders of the Notes.

SECTION 6.06    Reports by Indenture Trustee to Noteholders. The Indenture Trustee shall deliver to each holder of the Notes (and to each Person who was a holder of the Notes at any time during the applicable calendar year) such information as may be required to enable such holder to prepare its Federal and state income tax returns.

SECTION 6.07    Compensation and Indemnity. The Issuer shall pay to the Indenture Trustee from time to time reasonable compensation for all services rendered under this Indenture, and also all reasonable expenses, charges, counsel fees and other disbursements, including those of their attorneys, agents and employees, incurred in and about the performance of their powers and duties under this Indenture. The Issuer further agrees to indemnify and save the Indenture Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder, and which are not due to its negligence or willful misconduct, to the extent solely payable from the Indenture Trust Estate. To secure the Indenture Trustee's right to receive amounts pursuant to this Section 6.07, the Indenture Trustee shall have a lien against the Indenture Trust Estate that is subordinate to the rights of the Noteholders. Without prejudice to its rights hereunder, when the Indenture Trustee incurs expenses or renders services after a Default specified in Sections 5.01(iv) or (v) occurs, such expenses and the compensation for such services (including the fees and expenses of its agent and counsel) shall constitute expenses of administration under the applicable bankruptcy law. The provisions of this Section 6.07 shall survive the satisfaction and discharge of this Indenture and the resignation or removal of the Indenture Trustee.

SECTION 6.08    Replacement of Indenture Trustee. No resignation or removal of the Indenture Trustee and no appointment of a successor Indenture Trustee shall become effective until the acceptance of appointment by the successor Indenture Trustee pursuant to this Section 6.08. The Indenture Trustee may resign at any time by so notifying the Issuer. The Administrator shall remove the Indenture Trustee if:

(i)    the Indenture Trustee fails to comply with Section 6.11;

46

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:09:15 AM
Ramsey County, MN

(ii)     an Insolvency Event occurs with respect to the Indenture Trustee;

(iii)    a receiver or other public officer takes charge of the Indenture Trustee or its property; or

(iv)    the Indenture Trustee otherwise becomes incapable of acting.

If the Indenture Trustee resigns or is removed or if a vacancy exists in the office of Indenture Trustee for any reason (the Indenture Trustee in such event being referred to herein as the retiring Indenture Trustee), the Administrator shall promptly appoint a successor Indenture Trustee.

A successor Indenture Trustee shall deliver a written acceptance of its appointment to the retiring Indenture Trustee and the Issuer. Thereupon the resignation or removal of the retiring Indenture Trustee shall become effective, and the successor Indenture Trustee shall have all the rights, powers and duties of the Indenture Trustee under this Indenture. The successor Indenture Trustee shall mail a notice of its succession to the holders of the Notes and each Rating Agency. The retiring Indenture Trustee shall promptly transfer all property held by it as Indenture Trustee to the successor Indenture Trustee upon payment of all monies due and owing to the retiring Indenture Trustee.

If a successor Indenture Trustee does not take office within 60 days after the retiring Indenture Trustee resigns or is removed, the retiring Indenture Trustee, the Issuer or the holders of a majority in Outstanding Amount of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee.

If the Indenture Trustee fails to comply with Section 6.11, any holder of the Notes may petition any court of competent jurisdiction for the removal of the Indenture Trustee and the appointment of a successor Indenture Trustee.

Notwithstanding the replacement of the Indenture Trustee pursuant to this Section, the Issuer's and the Administrator's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee.

SECTION 6.09    Successor Indenture Trustee by Merger. If the Indenture Trustee consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation or banking association, the resulting, surviving or transferee corporation without any further act shall be the successor Indenture Trustee; provided that such corporation or banking association shall be otherwise qualified and eligible under Section 6.11. The Indenture Trustee shall provide the Rating Agencies prior written notice of any such transaction.

In case at the time such successor or successors by merger, conversion or consolidation to the Indenture Trustee shall succeed to the trusts created by this Indenture any of the Notes shall have been authenticated but not delivered, any such successor to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee, and deliver such Notes so authenticated; and in case at that time any of the Notes shall not have been authenticated, any successor to the Indenture Trustee may authenticate such Notes either in the name of any predecessor hereunder

47

Filed in Second Judicial District Court
2/18/2006 11:08:15 PM
Ramsey County, MN

or in the name of the successor to the Indenture Trustee; and in all such cases such certificates shall have the full force which it is anywhere in the Notes or in this Indenture provided that the certificate of the Indenture Trustee shall have.

SECTION 6.10    Appointment of Co-Trustee or Separate Trustee. (a) Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Indenture Trust Estate may at the time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Indenture Trust Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the holders of the Notes, such title to the Indenture Trust Estate, or any part hereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 and no notice to holders of the Notes of the appointment of any co-trustee or separate trustee shall be required under Section 6.08 hereof.

(b)    Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Indenture Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)    the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c)    Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article VI. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording

48

protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d)     Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

SECTION 6.11     Eligibility; Disqualification. There shall at all times be an Indenture Trustee hereunder which shall be eligible to act as Indenture Trustee under TIA Section 310(a)(1) and shall have a combined capital and surplus of at least $50,000,000 (and, with respect to any successor Indenture Trustee, having a rating of at least "Baa3" from Moody's unless the Rating Agency Condition is satisfied). If such corporation publishes reports of condition at least annually, pursuant to law or the requirements of federal, state, territorial or District of Columbia supervising or examining authority, then for the purposes of this Section 6.11, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Indenture Trustee shall cease to be eligible in accordance with the provisions of this Section 6.11, it shall resign immediately in the manner and with the effect specified in this Article VI. Neither the Issuer nor any Person directly or indirectly controlling or controlled by, or under common control with, the Issuer shall serve as Indenture Trustee.

SECTION 6.12     Back-up Certification. The Indenture Trustee shall provide the Depositor with a certificate substantially in the form attached hereto as Exhibit I at the request of the Administrator; provided that the Indenture Trustee shall have no responsibility to file such certificate with the Securities and Exchange Commission.

### ARTICLE VII

#### Noteholders' Lists and Reports

SECTION 7.01     Issuer To Furnish Indenture Trustee Names and Addresses of Noteholders. The Issuer will furnish or cause to be furnished to the Indenture Trustee (a) not more than five days after the earlier of (i) each Record Date and (ii) three months after the last Record Date, a list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the holders of the Notes as of such Record Date, (b) at such other times as the Indenture Trustee may request in writing, within 30 days after receipt by the Issuer of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; *provided, however*, that so long as the Indenture Trustee is the Note Registrar, no such list shall be required to be furnished.

SECTION 7.02     Preservation of Information; Communications to Noteholders. (a) The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the holders of the Notes contained in the most recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and addresses of the holders of the

49

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

Notes received by the Indenture Trustee in its capacity as Note Registrar. The Indenture Trustee may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.

(b)     Upon receipt by the Indenture Trustee of any request by a holder of the Notes to receive a copy of the current list of holders of the Notes, the Indenture Trustee shall promptly notify the Administrator thereof by providing to the Administrator a copy of such request and a copy of the list of holders of the Notes produced in response thereto.

(c)     The Indenture Trustee shall furnish to the holders of the Notes promptly upon receipt of a written request therefor, duplicates or copies of all reports, notices, requests, demands, certificates, financial statements and any other instruments furnished to the Indenture Trustee under the Basic Documents.

SECTION 7.03     Reports by Issuer. (a) The Issuer shall cause the Administrator to furnish the Issuer, the Indenture Trustee and the Grantor Trustee the reports required by the Administration Agreement and by Section 3.24 of this Indenture.

(b)     Unless the Issuer otherwise determines, the fiscal year of the Issuer shall end on June 30 of each year.

ARTICLE VIII

Accounts, Disbursements and Releases

SECTION 8.01     Collection of Money. (a) Except as otherwise expressly provided herein, the Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to this Indenture. The Indenture Trustee shall apply all such money received by it on behalf of the holders of the Notes as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Indenture Trust Estate, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default under this Indenture and any right to proceed thereafter as provided in Article V.

(b)     The Indenture Trustee shall deposit into the Collection Account all payments it receives from the Servicer by or on behalf of the Obligors with respect to the Student Loans, and all related Liquidation Proceeds and Recoveries, as collected during the Collection Period. For purposes of this Article VIII, the phrase "payments by or on behalf of Obligors" shall mean payments made with respect to the Student Loans, as applicable, by or on behalf of borrowers thereof and the Guarantee Agency.

(c)     The Indenture Trustee shall deposit into the Collection Account the aggregate Purchase Amount it receives with respect to Purchased Student Loans and all other amounts received from the Sellers or the Servicer with respect to the Student Loans. The

50

Filed in Second Judicial District Court
2/03/2008 1:08:15 AM
Ramsey County, MN

Indenture Trustee also shall deposit into the Collection Account all amounts transferred from the Pre-Funding Account pursuant to Section 8.10.

SECTION 8.02    Trust Accounts.  (a)(i)  The Issuer, for the benefit of the Noteholders and itself, shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Collection Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders and the Issuer.  The Collection Account will initially be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee.  The Issuer will make an initial deposit on the Closing Date into the Collection Account of cash equal to $1,282,227,853, of which $1,196,164,477 amount will be disbursed on the Closing Date by the Indenture Trustee, pursuant to written instructions of the Administrator, to acquire the Initial Financed Student Loans and $86,063,376 will be disbursed on the Closing Date by the Indenture Trustee, pursuant to written instructions of the Administrator, to pay the First Marblehead Corporation a structuring advisory fee.

    (ii)    The Issuer, for the benefit of the Noteholders and itself, shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Reserve Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders and the Issuer.  The Reserve Account initially will be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee. The Issuer will make an initial deposit on the Closing Date into the Reserve Account of cash or certain Eligible Investments equal to the Reserve Account Initial Deposit.

    (iii)    The Issuer, for the benefit of the Noteholders and itself, shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Pre-Funding Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders and the Issuer.  The Pre-Funding Account initially will be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee.  The Issuer will make an initial deposit on the Closing Date into the Pre-Funding Account of cash or certain Eligible Investments equal to $143,530,079 (the "Pre-Funded Amount"), to be used for the purchase of Subsequent Student Loans and as provided by Section 8.10 hereof.

    (b)    Funds on deposit in the Collection Account, the Reserve Account and the Pre-Funding Account (together, the "Trust Accounts") shall be invested by the Indenture Trustee (or any custodian or designated agent with respect to any amounts on deposit in such accounts) in Eligible Investments pursuant to written instructions by the Issuer; *provided, however*, it is understood and agreed that the Indenture Trustee shall not be liable for any loss arising from such investment in Eligible Investments. All such Eligible Investments shall be held by (or by any custodian on behalf of) the Indenture Trustee for the benefit of the Noteholders and the Issuer; provided that on the Business Day preceding each Distribution Date on which funds in the applicable Trust Account will be needed, all interest and other investment income (net of losses and investment expenses) on funds on deposit therein shall be deposited into the Collection Account and shall constitute a portion of the Available Funds for such Distribution Date.  Other than as described in the following proviso or as otherwise permitted by the Rating

51

Agencies, funds on deposit in the Trust Accounts shall be invested in Eligible Investments that will mature so that such funds will be available at the close of business on the Business Day preceding the following Distribution Date for which such funds are needed; *provided, however,* that funds on deposit in Trust Accounts may be invested in Eligible Investments of the Indenture Trustee which may mature so that such funds will be available on such Distribution Date. Funds deposited in a Trust Account on a Business Day which immediately precedes a Distribution Date upon the maturity of any Eligible Investments are not required to be invested overnight.

(c)     The Indenture Trustee, on behalf of the Noteholders, shall possess all right, title and interest in all funds on deposit from time to time in the Trust Accounts and in all proceeds thereof (including all income thereon) and all such funds, investments, proceeds and income shall be part of the Indenture Trust Estate. Subject to the Issuer's power to instruct the Indenture Trustee pursuant to paragraph (b) above, the Trust Accounts shall be under the sole dominion and control of the Indenture Trustee for the benefit of the Noteholders. If, at any time, any of the Trust Accounts ceases to be an Eligible Deposit Account, the Indenture Trustee (or the Administrator on its behalf) agrees, by its acceptance hereto, that it shall within 5 Business Days (or such longer period, not to exceed 30 calendar days, as to which each Rating Agency may consent) establish a new Trust Account as an Eligible Deposit Account and shall transfer any cash and/or any investments to such new Trust Account. In connection with the foregoing, the Issuer agrees that, in the event that any of the Trust Accounts are not accounts with the Indenture Trustee, the Issuer shall notify the Indenture Trustee, in writing, promptly upon any of such Trust Accounts ceasing to be an Eligible Deposit Account.

(A)     With respect to the Trust Account Property, the Indenture Trustee agrees, by its acceptance hereof, that:

(B)     any Trust Account Property that is held in deposit accounts shall be held solely in Eligible Deposit Accounts; and, subject to Section 8.02(b), each such Eligible Deposit Account shall be subject to the exclusive custody and control of the Indenture Trustee, and the Indenture Trustee shall have sole signature authority with respect thereto;

(C)     any Trust Account Property shall be Delivered to the Indenture Trustee in accordance with the definition of "Delivery" and shall be held, pending maturity or disposition, solely by the Indenture Trustee or such other Person acting solely for the Indenture Trustee as required for Delivery;

(D)     In the event that the Indenture Trustee, in its capacity as securities intermediary has or subsequently obtains by agreement, operation of law or otherwise a security interest in the Trust Accounts or any security entitlement credited thereto, the Indenture Trustee, in its capacity as securities intermediary hereby agrees that such security interest shall be subordinate to the security interest of the Indenture Trustee for the benefit of the Noteholders. The financial assets and other items deposited to the Trust Accounts will not be subject to deduction, set-off, banker's lien, or any other right in favor of any person other than the Indenture Trustee (except that the Indenture Trustee, in its capacity as securities intermediary may set off (i) the face amount of any checks

52

Filed in Second Judicial District Court
2/3/2006 1:09:15 AM
Ramsey County, MN

which have been credited to the Trust Accounts but are subsequently returned unpaid because of uncollected or insufficient funds, and (ii) all amounts due to it in respect of its customary fees and expenses for the routine maintenance and operation of the Trust Accounts;

(E)     The Issuer shall instruct the Indenture Trustee to make withdrawals and payments from the Trust Accounts for the purpose of permitting the Indenture Trustee to carry out its duties under this Indenture;

(F)     Each Trust Account provided for herein to be established and maintained by the Indenture Trustee shall be so established and maintained by the Indenture Trustee, as securities intermediary (in such capacity, the "Securities Intermediary"). Each item of "investment property" within the meaning of Section 9-102(a)(49) of the New York Uniform Commercial Code (which shall not be deemed to include the Financed Student Loans or the related notes evidencing the Financed Student Loans) or "money" within the meaning of Section 1-201(24) of the New York Uniform Commercial Code, that is (whether investment property, security, instrument or cash) credited to such a Trust Account shall be treated as a "financial asset" within the meaning of Section 8-102(a)(9) of the New York Uniform Commercial Code. The State of New York shall be deemed to be the Securities Intermediary's location for purposes of the New York Uniform Commercial Code, and each such Trust Account (as well as the securities entitlements related thereto) shall be governed by the laws of the State of New York; and

(G)     Following the filing of any UCC financing statement with respect to this Indenture the Indenture Trustee hereby agrees to notify the Issuer six months prior to the expiration of such filing of the need to file continuation statements, and to the extent permitted by law, the Issuer shall execute and file such continuation statements, and provide a copy thereof to the Indenture Trustee along with an Opinion of Counsel to the effect that all action has been taken as is necessary to maintain the lien and security interest created by this Indenture.

(d)     On each Distribution Date on which neither a Class B Note Interest Trigger nor a Class C Note Interest Trigger is in effect, the Administrator shall instruct the Indenture Trustee in writing (based on the information contained in the Administrator's Officer's Certificate and each related Servicer's Report delivered pursuant to the Administration Agreement) to make the following deposits and distributions to the Persons or to the account specified below by 11:00 a.m. (New York time), to the extent of the amount of Available Funds in the Collection Account, in the following order of priority (except as otherwise provided in Sections 5.04(b) or 5.04(c) and the Indenture Trustee shall comply with such instruction:

(1) FIRST, pro rata: (i) Indenture Trustee fees and expenses, Irish Paying Agent fees and expenses, Grantor Trustee fees and expenses, Owner Trustee fees and expenses, and Back-up Administrator fees and expenses in an aggregate amount not to exceed $250,000, per annum; (ii) Servicing Fees with respect to the Financed Student Loans due on such Distribution Date and all prior unpaid Servicing Fees allocated to the Financed

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

Student Loans up to the amount specified in the Servicing Agreement, and
(iii) Administration Fees with respect to the Financed Student Loans up to the amount
specified in the Administration Agreement;

(2) SECOND, to TERI, the additional guaranty fees pursuant to the TERI
Guaranty Agreements, which will be deposited into the TERI Pledge Fund;

(3) THIRD, to the holders of each Class of Class A Notes, the Noteholders'
Interest Distribution Amount for such Class A Notes on a pro rata basis;

(4) FOURTH, to the holders of the Class B Notes, the Noteholders' Interest
Distribution Amount for the Class B Notes;

(5) FIFTH, to the holders of the Class C Notes, the Noteholders' Interest
Distribution Amount for the Class C Notes;

(6) SIXTH, to the Reserve Account, an amount, up to the amount, if any,
necessary to reinstate the balance of the Reserve Account to the greater of the amounts
determined pursuant to clauses (b) and (c) of the definition of Specified Reserve Account
Balance;

(7) SEVENTH, to TERI, to purchase Rehabilitated Financed Student Loans;

(8) EIGHTH, to the holders of (i) the Class A-1 Notes, until paid in full, then (ii)
the Class A-2 Notes, until paid in full, then (iii) the Class A-3 Notes, until paid in full,
then (iv) the Class A-4 Notes, until paid in full, then (v) the Class A-5-1 Notes, until paid
in full, then (vi) the Class A-5-2 Notes, until paid in full, then (vii) the Class A-5-3 Notes,
until paid in full, then (viii) the Class A-5-4 Notes, until paid in full, then (ix) the Class
A-5-5 Notes, until paid in full, then (x) the Class A-5-6 Notes, until paid in full, then (xi)
the Class A-5-7 Notes, until paid in full, then (xii) the Class A-5-8 Notes, until paid in
full, then (xiii) the Class A-5-9 Notes, until paid in full, then (xiv) the Class A-5-10
Notes, until paid in full, then (xv) the Class A-5-11 Notes, until paid in full, then (xvi) the
Class A-5-12 Notes, until paid in full, then (xvii) the Class A-5-13 Notes, until paid in
full, then (xviii) the Class A-5-14 Notes, until paid in full, then (xix) the Class A-5-15
Notes, until paid in full, then (xx) the Class A-5-16 Notes, until paid in full, then (xxi) the
Class A-5-17 Notes, until paid in full, then (xxii) the Class A-5-18 Notes, until paid in
full, then (xxiii) the Class A-5-19 Notes, until paid in full, then (xxiv) the Class A-5-20
Notes, until paid in full, then (xxv) the Class A-5-21 Notes, until paid in full, then (xxvi)
the Class A-5-22 Notes, until paid in full, then (xxvii) the Class A-5-23 Notes, until paid
in full, then (xxviii) the Class A-5-24 Notes, until paid in full, then (xxix) the Class A-5-
25 Notes, until paid in full, then (xxx) the Class B Notes, until paid in full, and finally,
(xxxi) the Class C Notes, until paid in full, the Noteholders' Principal Distribution
Amount; *provided,* however, that on and after the Stepdown Date and so long as no
Subordinate Note Principal Trigger has occurred and remains in effect, the Class A
Percentage of the Noteholders' Principal Distribution Amount will be payable to the
Class A Notes (in the same order of priority set forth above), the Class B Percentage of
the Noteholders' Principal Distribution Amount will be payable to the Class B Notes and

54

Filed in Second Judicial District Court
2/18/2006 1:08:15 RM
Ramsey County, MN

the Class C Percentage of the Noteholders' Principal Distribution Amount will be payable to the Class C Notes until paid in full;

(9) NINTH, pro rata: (i) any unreimbursed Advances to FMC and (ii) for all amounts in excess of the maximum amounts specified in priority FIRST: for Indenture Trustee fees and expenses pursuant to the Indenture; for Irish Paying Agent fees and expenses pursuant to the Irish Paying Agent Agreement; for Grantor Trustee fees and expenses pursuant to the Grantor Trust Agreement; Owner Trustee fees and expenses pursuant to the Trust Agreement; for Back-up Administrator fees and expenses pursuant to the Back-up Administration Agreement; indemnities, fees and expenses of the Servicer; and the portion of the Administration Fee and expenses allocated to the Notes and all unpaid Administration Fees and expenses from prior Collection Periods allocated to the Notes;

(10) TENTH, (a) if a Turbo Trigger is in effect, to the holders of the Notes, any remaining amounts as payment of principal allocated among the Noteholders as described in priority EIGHTH until the Outstanding Amount of each Class of Notes is reduced to zero;

(11) ELEVENTH, to the holders of the Class A-5 Notes any Prepayment Penalty for that Distribution Date and any Prepayment Penalties remaining unpaid from prior Distribution Dates; and

(12) TWELFTH, to FMC, any unpaid and accrued structuring advisory fees, and then to the Certificateholders, any remaining amounts.

Notwithstanding the foregoing, for each Distribution Date on which (i) a Class B Note Interest Trigger is in effect, amounts payable pursuant to priority FOURTH and priority FIFTH will instead be paid following priority EIGHTH, and (ii) a Class C Note Interest Trigger is in effect, amounts payable pursuant to priority FIFTH will be paid following priority EIGHTH.

SECTION 8.03    General Provisions Regarding Accounts. (a) So long as no Default shall have occurred and be continuing, all or a portion of the funds in the Trust Accounts shall be invested in Eligible Investments and reinvested by the Indenture Trustee upon Issuer Order, subject to the provisions of Section 8.01(b); *provided, however,* that funds in the Pre-Funding Account shall be invested only in Eligible Investments described in clause (a) of the definition thereof. All income or other gain from investments of moneys deposited in the Trust Accounts shall be deposited by the Indenture Trustee in the Collection Account, and any loss resulting from such investments shall be charged to such Trust Account. The Issuer will not direct the Indenture Trustee to make any investment of any funds or to sell any investment held in any of the Trust Accounts unless the security interest granted and perfected in such account will continue to be perfected in such investment or the proceeds of such sale, in either case without any further action by any Person, and, in connection with any direction to the Indenture Trustee to make any such investment or sale, if requested by the Indenture Trustee, the Issuer shall deliver to the Indenture Trustee an Opinion of Counsel, acceptable to the Indenture Trustee, to such effect.

55

Filed in Second Judicial District Court
2/18/2006 11:08:15 RM
Ramsey County, MN

(b)     Subject to Section 6.01(c), the Indenture Trustee shall not in any way be held liable by reason of any insufficiency in any of the Trust Accounts resulting from any loss on any Eligible Investment included therein except for losses attributable to the Indenture Trustee's failure to make payments on such Eligible Investments issued by the Indenture Trustee, in its commercial capacity as principal obligor and not as trustee, in accordance with their terms.

(c)     If (i) the Issuer shall have failed to give investment directions for any funds on deposit in the Trust Accounts to the Indenture Trustee by 10:00 a.m. Eastern Time (or such other time as may be agreed by the Issuer and Indenture Trustee) on any Business Day; or (ii) a Default shall have occurred and be continuing, but the Notes shall not have been declared due and payable pursuant to Section 5.02, or, if such Notes shall have been declared due and payable following an Event of Default, amounts collected or receivable from the Indenture Trust Estate are being applied in accordance with Section 5.04 as if there had not been such a declaration; then the Indenture Trustee shall, to the fullest extent practicable, invest and reinvest funds in the Trust Accounts in one or more Eligible Investments.

SECTION 8.04    Release of Indenture Trust Estate. (a) Subject to the payment of its fees and expenses pursuant to Section 6.07, the Indenture Trustee may, and when required by the provisions of this Indenture shall, execute instruments to release property from the lien of this Indenture, or convey the Indenture Trustee's interest in the same, in a manner and under circumstances that are not inconsistent with the provisions of this Indenture. No party relying upon an instrument executed by the Indenture Trustee as provided in this Article VIII shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any moneys.

(b)     The Indenture Trustee shall, at such time as there are no Notes Outstanding and all sums due the Indenture Trustee pursuant to Section 6.07 have been paid, release any remaining portion of the Indenture Trust Estate that secured the Notes from the lien of this Indenture and release to the Issuer or any other Person entitled thereto any funds then on deposit in the Trust Accounts. The Indenture Trustee shall release property from the lien of this Indenture pursuant to this Section 8.04(b) only upon receipt of an Issuer Request accompanied by an Officers' Certificate of the Issuer and an Opinion of Counsel meeting the applicable requirements of Section 11.01.

SECTION 8.05    Opinion of Counsel. The Indenture Trustee shall receive at least seven days' notice when requested by the Issuer to take any action pursuant to Section 8.04(a), accompanied by copies of any instruments involved, and the Indenture Trustee shall also require, except in connection with any action contemplated by Section 8.04(c), as a condition to such action, an Opinion of Counsel, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with and such action will not materially and adversely impair the security for the Notes or the rights of the holders of the Notes in contravention of the provisions of this Indenture. Counsel rendering any such opinion may rely, without independent investigation, on the accuracy and validity of any certificate or other instrument delivered to the Indenture Trustee in connection with any such action.

SSL-DOCS2 70240931v7

SECTION 8.06    Cost of Issuance Account. The Issuer shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Cost of Issuance Account"). The Cost of Issuance Account shall not be a Trust Account and the Noteholders shall have no interest in the amount deposited therein. The Cost of Issuance Account initially will be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee. The Issuer shall make a deposit into the Cost of Issuance Account on the Closing Date in an amount equal to $4,300,000. Upon receipt of written instructions from the Administrator, the Indenture Trustee shall remit funds on deposit in the Cost of Issuance Account to pay the costs and expenses incurred by the Issuer in connection with issuing the Notes. Commencing 60 days after the Closing Date, the Indenture Trustee shall remit funds, if any, remaining in the Cost of Issuance Account as directed in writing by the Administrator.

SECTION 8.07    Application of Collections. (a)  With respect to each Financed Student Loan, all collections (including all Guarantee Payments) with respect thereto for the Collection Period shall be applied to interest and principal on such Financed Student Loan by allocating to interest the portion of such collection equal to the product of (A) the applicable interest rate on such Financed Student Loan, (B) the unpaid principal balance of such Financed Student Loan, and (C) the period of time elapsed since the preceding payment of interest on such Financed Student Loan was made (over the actual number of days in a year) ("Interest Collections") and by allocating the remainder of such collection to principal.

(b)    All Liquidation Proceeds shall be applied to the related Financed Student Loan.

SECTION 8.08    Reserve Account. (a)  On the Closing Date, the Issuer shall deposit the Reserve Account Initial Deposit into the Reserve Account. The Indenture Trustee shall deposit into the Reserve Account the amounts, if any, required to be deposited pursuant to Sections 8.02 and 8.11.

(b)    (i) If the amounts payable for any Distribution Date pursuant to Section 8.02(d)(1) exceed the amount distributed or allocated to the applicable parties on such Distribution Date, the Administrator shall instruct the Indenture Trustee in writing to withdraw from the Reserve Account on such Distribution Date an amount equal to such excess, to the extent of funds available therein, and to distribute or allocate such amounts to the applicable parties pro rata (based upon the amount owed to such parties).

(ii)    [Reserved]

(iii)    If the amounts payable for any Distribution Date pursuant to Section 8.02(d)(2) exceed the amount transferred to the TERI Pledge Fund on such Distribution Date, the Administrator shall instruct the Indenture Trustee in writing to withdraw from the Reserve Account on such Distribution Date an amount equal to such excess, to the extent of funds available therein after giving effect to paragraphs (b)(i) through (b)(ii) above, and to transfer such amount to the TERI Pledge Fund.

Filed in Second Judicial District Court
2/18/2005 1:08:15 PM
Ramsey County, MN

(iv) If the Noteholders' Interest Distribution Amount with respect to the Class A Notes for a Distribution Date exceeds the amount distributed to the holders of the Class A Notes on such Distribution Date, the Administrator shall instruct the Indenture Trustee in writing to withdraw from the Reserve Account on such Distribution Date an amount equal to such excess, to the extent of funds available therein after giving effect to paragraph (b)(i) through (b)(iii) above, and to distribute such amount pro rata (based on the amount of such excess allocable to the holders of the Class A Notes), to the holders of the Class A Notes entitled thereto.

(v) If on the Final Maturity Date for a Class of Class A Notes, the outstanding principal balance of the applicable Class of Class A Notes (prior to giving effect to any distribution of principal thereon on such date) exceeds the amount of principal distributed to the holders of the applicable Class of Class A Notes on such date, the Administrator shall instruct the Indenture Trustee in writing on such date to withdraw from the Reserve Account on such date an amount equal to such excess, to the extent of funds available therein, after giving effect to paragraphs (b)(i) through (b)(iv) above and to distribute such amount to the holders of the applicable Class of Class A Notes, in the same order and priority as is set forth in Section 8.02(d)(8).

(vi) If the Noteholders' Interest Distribution Amount with respect to the Class B Notes for a Distribution Date exceeds the amount distributed to the holders of the Class B Notes on such Distribution Date, the Administrator shall instruct the Indenture Trustee in writing to withdraw from the Reserve Account on such Distribution Date an amount equal to such excess, to the extent of funds available therein after giving effect to paragraph (b)(i) through (b)(v) above, and to distribute such amount, to the holders of the Class B Notes entitled thereto.

(vii) If on the Final Maturity Date for the Class B Notes, the outstanding principal balance of the Class B Notes (prior to giving effect to any distribution of principal thereon on such date) exceeds the amount of principal distributed to the holders of the Class B Notes on such date, the Administrator shall instruct the Indenture Trustee in writing on such date to withdraw from the Reserve Account on such date an amount equal to such excess, to the extent of funds available therein, after giving effect to paragraphs (b)(i) through (b)(vi) above and to distribute such amount to the holders of the Class B Notes.

(viii) If the Noteholders' Interest Distribution Amount with respect to the Class C Notes for a Distribution Date exceeds the amount distributed to the holders of the Class C Notes on such Distribution Date, the Administrator shall instruct the Indenture Trustee in writing to withdraw from the Reserve Account on such Distribution Date an amount equal to such excess, to the extent of funds available therein after giving effect to paragraph (b)(i) through (b)(vii) above, and to distribute such amount to the holders of the Class C Notes entitled thereto.

(ix) If on the Final Maturity Date for the Class C Notes, the outstanding principal balance of the Class C Notes (prior to giving effect to any distribution of principal thereon on such date) exceeds the amount of principal distributed

58

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

to the holders of the Class C Notes on such date, the Administrator shall instruct the Indenture Trustee in writing on such date to withdraw from the Reserve Account on such date an amount equal to such excess, to the extent of funds available therein, after giving effect to paragraphs (b)(i) through (b)(viii) above and to distribute such amount to the holders of the Class C Notes.

(c)     If the amount on deposit in the Reserve Account on any Distribution Date (without giving effect to all deposits or withdrawals therefrom on such Distribution Date) is greater than the Specified Reserve Account Balance for such Distribution Date, the Issuer shall instruct the Indenture Trustee in writing to deposit the amount of such excess into the Collection Account for distribution on such Distribution Date.

SECTION 8.09    Statements to Noteholders.  On each Determination Date preceding a Distribution Date, pursuant to the Administration Agreement the Administrator shall provide to the Indenture Trustee (with a copy to the Owner Trustee and the Rating Agencies) for the Indenture Trustee to forward on such succeeding Distribution Date to each holder of record of the Notes a statement setting forth at least the following information as to the Notes, to the extent applicable:

(1)    the amount of the distribution allocable to principal of each Class of Notes;

(2)    the amount of the distribution allocable to interest on each Class of Notes, together with the interest rates applicable with respect thereto;

(3)    the Pool Balance as of the close of business on the last day of the preceding Collection Period, after giving effect to the related payments allocated to principal reported under clause (1) above;

(4)    the aggregate outstanding principal balance of each Class of Notes as of such Distribution Date, after giving effect to related payments allocated to principal reported under clause (1) above;

(5)    for each Distribution Date (A) the amount of fees and expenses paid to the Indenture Trustee, the Owner Trustee and the Grantor Trustee; (B) the amount of the Servicing Fee and expenses paid to the Servicer; (C) the amount of fees paid to TERI; (D) the amount of the Administration Fee and expenses paid to the Administrator, and (E) the amount of the Back-Up Administration Fee and expenses paid to the Back-Up Administrator, and, in each case, with respect to such Collection Period, together with the amount, if any, remaining unpaid after giving effect to all such payments;

(6)    for each Distribution Date, the amount of the aggregate Realized Losses for the Financed Student Loans, if any, for such Collection Period and the balance of the Financed Student Loans that are delinquent in each delinquency period as of the end of such Collection Period;

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:09:15 RM
Ramsey County, MN

(7) the balance of the Reserve Account on such Distribution Date, after giving effect to changes therein on such Distribution Date;

(8) the amounts withdrawn from the Reserve Account on such Distribution Date;

(9) for Distribution Dates during the Funding Period, the remaining Pre-Funded Amount on such Distribution Date, after giving effect to changes therein during the related Collection Period;

(10) for the first Distribution Date on or following the end of the Funding Period, the amount of any remaining Pre-Funded Amount that has not been used to make Additional Fundings with respect to Subsequent Student Loans and is being deposited into the Collection Account;

(11) the amount of any Advance with respect to such Distribution Date;

(12) the amount transferred to the TERI Pledge Fund to acquire Rehabilitated Student Loans with respect to such Distribution Date; and

(13) the amount of the distribution allocable to Prepayment Penalties.

Each amount set forth pursuant to clauses (1), (2), (3), (5) and (6) above shall be expressed as a dollar amount per $50,000 of Original Principal Balance of a Note. A copy of the statements referred to above may be obtained by any Note Owner by a written request to the Indenture Trustee addressed to the Corporate Trust Office.

SECTION 8.10    Pre-Funding Account. (a) On the Closing Date, the Issuer will deposit in the Pre-Funding Account, $143,530,079, to be used by the Trust to acquire Subsequent Student Loans and as otherwise provided in this Section 8.10. On each Subsequent Transfer Date during the Funding Period on which Subsequent Student Loans are to be conveyed to the Issuer, the Issuer shall deliver to the Indenture Trustee a Student Loan Acquisition Certificate substantially in the form attached as Exhibit B hereto and, instruct the Indenture Trustee in writing to withdraw from the Pre-Funding Account an amount up to 113.25% of the sum of the principal balance of, plus to the extent capitalized or to be capitalized upon commencement of repayment or during deferment or forbearance, accrued interest on, such Subsequent Student Loans. The Administrator shall instruct the Indenture Trustee in writing to distribute such amount as directed by the Administrator to purchase Subsequent Student Loans; provided, however, upon each acquisition of Subsequent Student Loans, the amount deposited in the TERI Pledge Fund must be equal to or greater than 5.75% of the principal balance of such Subsequent Student Loans being acquired.

(b)    On or prior to the first Distribution Date following the end of the Funding Period, the Administrator shall instruct the Indenture Trustee in writing to transfer on such Distribution Date from the Pre-Funding Account to the Collection Account an amount equal to the funds remaining in the Pre-Funding Account. Any such funds so transferred shall be considered Available Funds for the related Distribution Date.

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

SECTION 8.11    Advances. (a) On or prior to any Distribution Date, a Certificateholder may, but shall not be obligated to, make an optional deposit (each, an "Optional Deposit") to the Reserve Account from funds to be released to such Certificateholder pursuant to Section 8.02(d)(11) on such Distribution Date or otherwise. Any such Optional Deposit shall be applied on the related Distribution Date in the same manner as other funds on deposit in the Reserve Account on the related Distribution Date in accordance with Section 8.08.

(b)    If on any Determination Date the amount required to be distributed on the upcoming Distribution Date pursuant to Section 8.02(d)(1), would exceed the sum of the aggregate amount in the Collection Account and the Reserve Account, the Administrator, in its sole option, may elect to deposit, or have an Affiliate deposit, in the Reserve Account (no later than the Business Day immediately preceding such Distribution Date) an amount up to the amount of such deficiency (such deposit, is referred to as an "Advance").

## ARTICLE IX

### Supplemental Indentures

SECTION 9.01    Supplemental Indentures Without Consent of Noteholders. (a) Without the consent of any holders of the Notes but with prior notice to the Rating Agencies, the Issuer and the Indenture Trustee, when authorized by an Issuer Order, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Indenture Trustee, for any of the following purposes:

(i)    to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii)    to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuer, and the assumption by any such successor of the covenants of the Issuer herein and in the Notes contained;

(iii)    to add to the covenants of the Issuer, for the benefit of the holders of the Notes, or to surrender any right or power herein conferred upon the Issuer;

(iv)    to convey, transfer, assign, mortgage or pledge any property to or with the Indenture Trustee;

(v)    to cure any ambiguity, to correct or supplement any provision herein or in any supplemental indenture which may be inconsistent with any other provision herein or in any supplemental indenture or to make any other provisions with respect to matters or questions arising under this Indenture or in any supplemental indenture; provided that such action shall not materially adversely affect the interests of the holders of the Notes; or

(vi)    to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of

Filed in Second Judicial District Court
2/30/2006 1:08:15 PM
Ramsey County, MN

the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI.

The Indenture Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b)     The Administrator, on behalf of the Issuer and the Indenture Trustee, when authorized by an Issuer Order, may, also without the consent of any of the holders of the Notes but upon satisfying the Rating Agency Condition, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture, including modifying in any manner the rights of the holders of the Notes under this Indenture; *provided, however*, that such action shall not, as evidenced by an Opinion of Counsel, adversely affect in any material respect the interests of any holder of the Notes.

SECTION 9.02     Supplemental Indentures with Consent of Noteholders. The Issuer and the Indenture Trustee, when authorized by an Issuer Order, also may, with prior notice to the Rating Agencies, and with the consent of the Interested Noteholders holding a majority of the Outstanding Amount of the related Classes of Notes, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the holders of the Notes under this Indenture; *provided, however*, that no such supplemental indenture shall, without the consent of the holder of each Outstanding Note affected thereby:

(i)     change the date of payment of any installment of principal of or interest on each Class of Notes, or reduce the principal amount thereof or the interest rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Indenture Trust Estate to payment of principal of or interest on the applicable Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(ii)     reduce the percentage of the Outstanding Amount of the Notes, the consent of the holders of which is required for any such supplemental indenture, or the consent of the holders of the Notes of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(iii)     modify or alter the provisions of the proviso to the definition of the term "Outstanding";

(iv)     reduce the percentage of the Outstanding Amount of the Notes required to direct the Indenture Trustee to direct the Issuer to sell or liquidate the Indenture Trust Estate pursuant to Section 5.04;

62

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

(v)    modify any provision of this Section except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the other Basic Documents cannot be modified or waived without the consent of the holder of each Outstanding Note affected thereby;

(vi)    modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any applicable Note on any Distribution Date (including the calculation of any of the individual components of such calculation);

(vii)    permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Indenture Trust Estate or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive any holder of any Note of the security provided by the lien of this Indenture; or

(viii)    change the definition of Interested Noteholders.

It shall not be necessary for any Act of holders of the Notes under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuer and the Indenture Trustee of any supplemental indenture pursuant to this Section, the Indenture Trustee shall mail to the holders of the Notes to which such amendment or supplemental indenture relates a notice prepared by the Issuer setting forth in general terms the substance of such supplemental indenture. Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

SECTION 9.03    Execution of Supplemental Indentures. In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article IX or the modifications thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive, and subject to Sections 6.01 and 6.02, shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

SECTION 9.04    Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuer and the holders of the Notes shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

SECTION 9.05    [Reserved]

SSL-DOCS2 70240931v7

Filed in Second Judicial District Court
2/18/2006 11:08:15 PM
Ramsey County, MN

SECTION 9.06    Reference in Notes to Supplemental Indentures.  Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Indenture Trustee shall, bear a notation in form approved by the Indenture Trustee as to any matter provided for in such supplemental indenture.  If the Issuer or the Indenture Trustee shall so determine, new Notes so modified as to conform, in the opinion of the Indenture Trustee and the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and authenticated and delivered by the Indenture Trustee in exchange for Outstanding Notes.

SECTION 9.07    Conformity With the Trust Indenture Act.  Every Supplemental Indenture executed pursuant to this Article IX shall conform to the requirements of the TIA as then in effect.

## ARTICLE X

### Reporting Requirements

SECTION 10.01    Annual Statement as to Compliance.  The Issuer will cause the Servicer to deliver to the Administrator, any applicable annual statements as to compliance required by the Servicer's Servicing Agreement.  Copies of any such annual statements will be provided to the Rating Agencies rating the Notes.

SECTION 10.02    Annual Independent Public Accountants' Servicing Report. Within 90 days of the end of the Servicer's regular fiscal-year or calendar-year audit period, the Issuer shall cause the Servicer to cause a firm of independent public accountants to furnish a statement to the Administrator and the Indenture Trustee in accordance with the Servicing Agreement.  Copies of any such statement shall be provided to the Rating Agencies rating the Notes.

## ARTICLE XI

### Miscellaneous

SECTION 11.01    Compliance Certificates and Opinions, etc.  Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee (i) an Officers' Certificate of the Issuer stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

SSL-DOCS2 70240931v7